# United States Tax Court

T.C. Memo. 2022-112

HEATHER P. DUNN AND EDISON DUNN,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 9996-17.                      Filed November 29, 2022.

————

*Josie J. Harris-Walton*, for petitioners.

*Shannon E. Craft* and *John T. Arthur*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, *Judge*:  Respondent determined deficiencies of $24,451 and $14,440 and accuracy-related penalties pursuant to section 6662(a) of $4,890 and $2,888 for taxable years 2013 and 2014 (years in issue), respectively.[1]  The issues for decision are whether petitioners are entitled to deduct (1) depreciation on petitioner wife's Ford Explorer, (2) net losses, and (3) flowthrough losses from Magnet Development, LLC.  We must also decide whether petitioners are liable for accuracy-related penalties.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*2]                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate the stipulation of facts and the attached exhibits by this reference. Petitioners resided in Georgia when the Petition was timely filed.

Petitioners formed Magnet Development, LLC (Magnet), in February 2007 to manage investments in real estate. On March 14, 2008, Magnet purchased a 21-unit apartment building in Hephzibah, Georgia (Hephzibah building). Petitioners lived approximately 150 miles from the Hephzibah building. To assist in managing the Hephzibah building Magnet employed Ebony Calhoun from January 5 to July 27, 2013, to collect rents, show apartments, and clean vacant apartments. In addition Magnet hired Augusta Partners Property Management, LLC (Augusta Partners), to rent, lease, operate, and manage the Hephzibah building pursuant to a contract with an effective date of January 2, 2014. Petitioners owned additional properties in Athens and Snellville, Georgia, in their individual names and which they managed on their own.

During the years in issue petitioner husband was employed as a full-time technology support specialist with Gwinnett County Public Schools, and petitioner wife was employed as a full-time computer specialist with Huron Consulting Services, LLC. In addition they attempted to work as full-time real estate professionals. In order to substantiate their real estate activities, petitioners kept two separate logs with respect to the hours they claim to have spent working on the Hephzibah building, the Athens property, and the Snellville property in 2013 and 2014. One log relates to activity conducted at the Hephzibah building in 2014. This log provides the date along with a two- or three-word description of the job completed; it does not list the hours spent working. The second log relates to activity conducted at all three properties in 2013 and 2014. This log provides the date, name of the property, hours worked, and a vague description of the work performed; it does not specify the tasks each petitioner individually performed.

Petitioners each owned 50% of Magnet, which was treated as a non-TEFRA partnership for federal income tax purposes. Magnet timely filed Forms 1065, U.S. Return of Partnership Income, for the years in issue. Magnet reported income and claimed expense deductions for the Athens and Snellville properties on its Forms 8825, Rental Real Estate Income and Expenses of a Partnership or an S Corporation. It

[*3] also claimed depreciation deductions at 100% business use of a 2013 Ford Explorer that petitioner wife purchased in May 2013. It reported net losses for both years in issue.

Petitioners filed a joint individual income tax return for each year in issue; however, they did not make an election to group their rental real estate activities as one activity for purposes of section 469(c)(7)(A) for either year. They claimed flowthrough losses from Magnet of $85,260 and $48,740 for taxable years 2013 and 2014, respectively. Petitioners also claimed a loss deduction of $7,028 on their Schedule E, Supplemental Income and Loss, for 2014.

On June 8, 2016, the examiner's group manager signed a Civil Penalty Approval Form with respect to the examination of Magnet approving accuracy-related penalties pursuant to section 6662(a) on the individual shareholders' returns for 2013 and 2014. On September 19, 2016, the group manager signed a second Civil Penalty Approval Form approving accuracy-related penalties against petitioners for the same period. On February 1, 2017, respondent issued petitioners a notice of deficiency for the years in issue.

OPINION

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Under section 7491(a), in certain circumstances, the burden of proof may shift from the taxpayer to the Commissioner. Petitioners have not claimed nor shown that they have met the specifications of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to a deduction. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). A taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976).

**[*4]** I.     *Depreciation Deductions*

For property used in a trade or business or held for the production of income, a depreciation deduction is allowed for reasonable exhaustion or wear and tear.  § 167(a).  Magnet claimed depreciation deductions for petitioner wife's Ford Explorer for the years in issue.  Petitioners failed to explain why Magnet should be entitled to deductions for property it did not own.

To substantiate entitlement to a depreciation deduction, a taxpayer must establish the property's depreciable basis by showing the cost of the property, its useful life, and the previously allowed depreciation.  *Cluck v. Commissioner*, 105 T.C. 324, 337 (1995).  To be entitled to a deduction for an automobile, a taxpayer must establish that the automobile was used at least partially for business, and the deductions will be allowed only to the extent of its business use.  In addition, a claimed deduction with respect to any "listed property"—a category including "any passenger automobile"—is subject to the heightened substantiation requirements under section 274(d).  *See* § 280F(d)(4) (defining "listed property").

Petitioners failed to substantiate the cost of the Ford Explorer, when it was placed in service, the business percentage use of the vehicle, and the previously allowed depreciation.  Accordingly, we sustain the disallowance of a deduction for depreciation for both 2013 and 2014.

II.     *Real Estate Losses*

For 2013 and 2014 Magnet reported income, expenses, and resulting losses of $3,662 and $5,100 for 2013 and 2014, respectively, for the properties in Athens and Snellville.  However, petitioners owned these properties in their individual capacities, not Magnet.  Petitioners did not provide any evidence to show that Magnet was entitled to deduct these losses.[2]  Accordingly, petitioners are not entitled to deduct them as flowthrough losses.

---

[2] Nor have petitioners claimed that they should be allowed to deduct Schedule E losses in those amounts; and even if they had, for the reasons set forth below they would not be entitled to them.

**[\*5]** III.    *Losses from Magnet*

A.    *Adjusted Basis*

Pursuant to section 704(d) "[a] partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred." Petitioners formed Magnet on February 8, 2007, and they provided no evidence showing their basis for 2013 or 2014. Because there is no evidence of petitioners' adjusted bases, they are not entitled to deduct losses from Magnet for 2013 and 2014.[3]

B.    *At Risk*

Pursuant to section 465(a) taxpayers are entitled to losses from rental real estate only to the extent of the aggregate amount with respect to which the taxpayer is at risk for such activity at the close of the year. Amounts considered at risk include (1) the amount of money and the adjusted basis of other property contributed by the taxpayer to the activity and (2) borrowed funds that the taxpayer is personally liable for or has pledged property for the borrowed amount. § 465(b). Petitioners failed to show that any amounts in respect of their rental real estate activities were at risk.

C.    *Section 469 Limitations*

Taxpayers may deduct costs for certain business and investment expenses under section 162. If the taxpayer is an individual, section 469 generally disallows any passive activity loss deduction for the taxable year and treats it as a deduction or credit for the next taxable year. § 469(a) and (b). A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. § 469(d)(1).

A passive activity is any trade or business in which the taxpayer does not materially participate. § 469(c)(1). A taxpayer is treated as materially participating in an activity only if his or her involvement in the operations of the activity is regular, continuous, and substantial. § 469(h)(1). Rental activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates.

---

[3] In their Posttrial Briefs petitioners rely on facts that are not supported by the evidentiary record.

[*6] § 469(c)(2). A taxpayer who actively participates in a rental real estate activity can deduct a maximum loss of up to $25,000 per year (subject to phaseout limitations) related to the activity. § 469(i)(1)–(3).

Section 469(c)(7) provides an exception to the general rule that a rental activity is per se passive. The rental activities of a taxpayer in a real property trade or business (a real estate professional) are not subject to the per se rule of section 469(c)(2). § 469(c)(7); *see Kosonen v. Commissioner*, T.C. Memo. 2000-107, slip op. at 9; Treas. Reg. § 1.469-9(b)(6), (c)(1). Rather, the rental activities of a real estate professional are subject to the material participation requirements of section 469(c)(1). *See* Treas. Reg. § 1.469-9(e)(1).

A taxpayer qualifies as a real estate professional if: (1) more than one-half of the personal services performed in trades and businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. § 469(c)(7)(B). Section 469(c)(7)(C) provides that "the term 'real property trade or business' means any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business." In the case of a joint return the above requirements are satisfied if either spouse separately satisfied these requirements. § 469(c)(7)(B)

A taxpayer is considered to have materially participated in an activity if one of the seven tests listed in the regulations is satisfied. Temp. Treas. Reg. § 1.469-5T(a). A taxpayer may establish hours of participation by any reasonable means. *Id.* para. (f)(4). Contemporaneous daily reports are not required if the taxpayer can establish participation by other reasonable means. *Id.* Reasonable means include "appointment books, calendars, or narrative summaries" that identify the services performed and "the approximate number of hours spent performing such services." *Id.* We have noted previously that we are not required to accept a postevent "ballpark guesstimate" or the unverified, undocumented testimony of taxpayers. *See, e.g., Moss v. Commissioner*, 135 T.C. 365, 369 (2010).

In 2013 and 2014 both petitioners worked full-time jobs unrelated to real estate. They provided logs that purported to show their collective rental real estate activities during that time. The logs show 767 hours

**[*7]** worked in 2013 and 407 hours worked in 2014; however, the logs do not specify which petitioner worked these hours. Moreover, the hours recorded in the logs are inflated because petitioners included not only hours spent performing activities related to rental real estate, but also the hours they spent physically present at the properties.

If a taxpayer is married, activity by the taxpayer's spouse counts in determining "material participation" by the taxpayer. *See* § 469(h)(5); Temp. Treas. Reg. § 1.469-5T(f)(3). Spousal attribution may not be used for the purpose of satisfying the 750-hour annual service requirement. *See Oderio v. Commissioner*, T.C. Memo. 2014-39, at *6.

Petitioners contend that they both spent more than one-half of the personal services they performed in a trade or business in a real property trades or business. We disagree. Both petitioners had full-time jobs unrelated to real estate. The evidence does not support the conclusion that half of their time was spent performing services in real property trades or businesses.

Petitioners further contend that they met the 750-hour requirement. To meet this requirement only one spouse needs to have reached the 750-hour mark. *See* § 469(c)(7)(B). Petitioners have not shown that either of them met the material participation requirements; therefore, neither petitioner qualifies as a real estate professional.

A taxpayer's material participation in a rental real estate activity is considered separately with respect to each rental property unless the taxpayer makes an election to treat all interests in rental real estate as a single rental real estate activity. § 469(c)(7)(A); Treas. Reg. § 1.469-9(e)(1). A taxpayer makes the election by "filing a statement with the taxpayer's original income tax return for the taxable year." Treas. Reg. § 1.469-9(g)(3). There is no evidence that petitioners made an election for either 2013 or 2014 to treat all their rental real estate activities as one activity.

Nor have they shown that they met one of the seven requirements of Temporary Treasury Regulation § 1.469-5T(a). The logs provide vague and misleading estimates of time spent on the rental properties. We cannot conclude from the logs that either petitioner performed more than 500 hours during the taxable year and that their participation in the activities was not less than the participation of any other individual (including individuals who are not owners of interests in the activities) for such year. *See id.* subpara. (1). Even if we were to find that

[*8] petitioners met the 100-hour requirement described in Temporary Treasury Regulation § 1.469-5T(a)(3), they have not shown that either Ms. Calhoun or Augusta Partners worked less than 100 hours.

We conclude that neither petitioner met the requirements for a real estate professional, nor have they shown they materially participated in their rental real estate activities. Therefore, petitioners are not entitled to deduct the flowthrough losses from Magnet. *See supra* note 2.

IV.   *Section 6662(a) Penalties*

The Commissioner bears the burden of production with respect to the penalty imposed by section 6662(a). § 7491(c). This burden of production includes producing evidence that the Commissioner has complied with the procedural requirements of section 6751(b). *Frost v. Commissioner*, 154 T.C. 23, 34 (2020). Once the Commissioner meets this burden, the taxpayer must come forward with contrary evidence. *Id.*

The Commissioner must show compliance with section 6751(b)(1), which requires that certain penalties be personally approved in writing by the immediate supervisor of the individual making the determination. *See Graev v. Commissioner*, 149 T.C. 485, 493 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016). We follow the relevant precedent of the Court of Appeals to which an appeal would generally lie. *See* § 7482(b)(1)(A); *see also Golsen v. Commissioner*, 54 T.C. 742 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). In this case, the appeal generally would lie in the U.S. Court of Appeals for the Eleventh Circuit. In *Kroner v. Commissioner*, 48 F.4th 1272 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73, the Eleventh Circuit disagreed with the Tax Court regarding the timing of the section 6751(b) approval requirement. The Eleventh Circuit concluded that "the IRS satisfies [s]ection 6751(b) so long as a supervisor approves an initial determination of a penalty assessment before it assesses those penalties." *Id.* at 1276. In this case both Civil Penalty Approval Forms were signed before the issuance of the notice of deficiency. Therefore, the requirements of section 6751(b) are met.

Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be reported on a return that is attributable to a substantial understatement of income tax. An understatement of tax is equal to the

**[*9]** amount of tax required to be shown on the return, less the amount shown. § 6662(d)(2)(A). With respect to individual taxpayers, an understatement of tax is substantial if it exceeds the greater of 10% of the tax required to be shown in the return or $5,000. § 6662(d)(1)(A). The understatements here meet these threshold requirements.

The penalty for an underpayment attributable to a substantial understatement of income tax under section 6662(b)(2) will not apply to the extent that a taxpayer shows he or she both had reasonable cause and acted in good faith with respect to that portion of the underpayment. § 6664(c)(1). Petitioners have not presented any evidence that their underpayments were due to reasonable cause. Therefore, they are liable for the section 6662(a) penalties for the years in issue.

We have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*