[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-13902

_____

BURT KRONER,

Petitioner-Appellee,

*versus*

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellant.

_____

Petition for Review of a Decision of the
U.S. Tax Court
Agency No. 23983-14

_____

Before NEWSOM, BRANCH, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal is about the IRS's process for assessing tax penalties. By statute, the IRS cannot assess certain penalties against a delinquent taxpayer "unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination . . . ." 26 U.S.C. § 6751(b). That statute tells us *who* must approve—the immediate supervisor—and *how* that approval must be made—in writing. This appeal presents the questions of *what* the supervisor must approve and *when* the supervisor must approve it. We have previously avoided deciding these questions, *see TOT Prop. Holdings, LLC v. Comm'r*, 1 F. 4th 1354, 1372 n.25 (11th Cir. 2021), but must answer them now because they control the resolution of this appeal.

Burt Kroner failed to report millions of dollars in income. After an audit, an IRS examiner sent him a letter that said Kroner owed penalties on top of his back taxes. *See* 26 U.S.C. § 6662. Kroner tried to negotiate without success; the examiner's direct supervisor signed a second letter, which proposed the same penalties, as well as a form approving those penalties. Eventually, after more failed negotiation, the IRS issued Kroner a statutory notice of deficiency, which triggered his right to petition the Tax Court for review. The Tax Court disallowed the penalties, holding that the supervisor's approval came too late because she had not approved the penalties at the time of the first letter. The IRS appealed,

arguing that the Tax Court misinterpreted Section 6751(b)'s requirements.

We agree with the IRS. Section 6751(b) says that "[n]o penalty . . . shall be assessed unless the initial determination of such assessment is personally approved. . . ." The statute prohibits assessing a penalty unless a condition has been met—supervisory approval of the initial determination of assessment. But the statute regulates assessments; it does not regulate communications to the taxpayer. Because the IRS did not assess Kroner's penalties without a supervisor approving an "initial determination of such assessment," we hold that the IRS has not violated Section 6751(b). Thus, we reverse the Tax Court.

## I.

In our system, the government does not send bills to taxpayers, instead relying on honest self-reports in the form of tax returns. When the IRS identifies a problem with respect to certain types of tax on a return, it must take several steps to convert that underreported liability into an "assessment of tax." The first of these is the "determination" of a "deficiency." A deficiency is the amount by which a taxpayer's liability exceeds the liability that he reports on his return, including any applicable penalties. 26 U.S.C. § 6211. Once the IRS "determines that there is a deficiency in respect of any [such] tax," it is "authorized to send notice of such deficiency to the taxpayer." 26 U.S.C. § 6212(a). A taxpayer served with such a notice may file a petition with the Tax Court for

"redetermination of the deficiency." 26 U.S.C. § 6213(a). After a deficiency is determined, the next step is "assessment," which formally places the taxpayer's liability on the IRS's books. Assessment clears the way for a demand for payment and the eventual issuance of a lien on the taxpayer's property, or for collection via levy if he still refuses to pay. *See* 26 U.S.C. §§ 6303(a), 6321, 6331.

Between 2005 and 2007, Burt Kroner failed to report just under twenty-five million dollars in cash transfers from a former business partner. The IRS began to investigate Kroner's returns in 2008 and eventually concluded that the transfers should have been reported as taxable income, a finding neither party disputes on appeal.

On August 6, 2012, the tax examiner assigned to the case met with Kroner's representatives. At this meeting, the agent provided Kroner with a letter and examination report detailing the IRS's proposed changes to his tax bill and asserting just under two million dollars in Section 6662 penalties. The August 6 letter asked Kroner to tell the IRS whether he agreed or disagreed with the proposed changes. If Kroner disagreed, he could (1) provide the IRS with additional information, (2) discuss the report with the examiner, (3) discuss it instead with the examiner's supervisor, or (4) request a conference with the IRS's Appeals Office. If Kroner took none of those steps by August 16, the letter cautioned, the IRS would process his case based on the report and issue him a statutory notice of deficiency that would allow him to petition the Tax Court for review.

Kroner timely replied to the letter and continued to discuss his case with the government for several months. Eventually, the IRS sent Kroner a "30-day letter" and an updated examination report. The updated report contained the same tax changes and penalties as before, plus accrued interest. The new letter was signed by the examiner's immediate supervisor, Diane Acosta, and again explained Kroner's options for agreeing or disagreeing with the proposed changes to his taxes. If he disagreed, Kroner could either request a meeting with Acosta's supervisor or a conference with the Appeals Office. The new letter cautioned that if Kroner failed to either respond or reach a settlement, he would receive a statutory notice of deficiency detailing the process for obtaining Tax Court review. The same day Acosta signed the 30-day letter, she also signed a Civil Penalty Approval Form blessing the proposed penalties.

Kroner requested a conference with the Appeals Office and continued negotiating with the IRS. Despite his efforts, he never reached a settlement. Over a year after it mailed him the 30-day letter, the IRS finally issued Kroner a statutory notice of deficiency. The notice explained that he had ninety days to file a petition with the Tax Court challenging the alleged deficiency, including the proposed penalties. Kroner timely petitioned, and the Tax Court took up the dispute.

After a trial, the Tax Court sustained the IRS's conclusion that Kroner's cash transfers were taxable but disallowed the proposed penalties on procedural grounds. The court held that the IRS

failed to show that it had obtained timely supervisory approval of the penalties under Section 6751(b). Relying on its prior decisions interpreting the supervisory approval requirement to impose a compliance deadline at the time of the "initial determination" of a penalty assessment, the Tax Court explained that this determination occurs "no later than when the Commissioner issues a revenue agent's report (RAR) to a taxpayer that proposes adjustments including penalties and gives the taxpayer the right to protest those proposed adjustments . . . with the Appeals Office." Applying this interpretation, the Tax Court held that the IRS's August 6 letter and examination report was the "initial determination" of Kroner's penalty assessment. Because Acosta did not sign a penalty approval form until October 31, the Tax Court determined that the IRS had violated Section 6751(b) by failing to obtain supervisory approval in time. Thus, the court held that Kroner's penalties were procedurally disallowed, a ruling that means that they can never be assessed.

The IRS appealed, challenging the Tax Court's interpretation of the supervisory approval requirement.

## II.

We review the legal conclusions of the Tax Court, including its interpretation of Section 6751(b), *de novo. Kardash v. Comm'r.*, 866 F.3d 1249, 1252 (11th Cir. 2017). Although we generally give respectful consideration to the Tax Court's decisions, those

20-13902          Opinion of the Court          7

decisions do not bind us. *See Dobson v. Comm'r.*, 320 U.S. 489, 499, 502 (1943).

## III.

This appeal presents a question of first impression about Section 6751(b). To answer these types of questions, we begin with the statute's text. That is often where we end as well. "[B]ecause where the statutory language is clear and unambiguous, we 'presume that Congress said what it meant and meant what it said.'" *United States v. Chafin*, 808 F.3d 1263, 1270 (11th Cir. 2015) (quoting *United States v. Browne*, 505 F.3d 1229, 1250 (11th Cir. 2007)). "Indeed, '[o]ur inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.'" *Id.* (quoting *Med. Transp. Mgmt. Corp. v. Comm'r.*, 506 F.3d 1364, 1368 (11th Cir. 2007)).

Turning to the statute's text, we see that it regulates the process of assessing tax penalties. The title of subsection (b) is "[a]pproval of assessment." The text provides that "[n]o penalty under this title *shall be assessed* unless the initial determination of *such assessment* is personally approved (in writing) by the immediate supervisor of the individual making such determination . . . ." 26 U.S.C. § 6751(b)(emphasis added).

Kroner argues, citing a series of Tax Court decisions, that the statute restricts *communications* between the IRS and a taxpayer. The Tax Court has held that an initial determination of an assessment is any "communication that advises the taxpayer that

8                    Opinion of the Court                    20-13902

penalties will be proposed . . . ." *Clay v. Commissioner*, 152 T.C. 223, 249 (2019), *aff'd on other grounds*, 990 F.3d 1296 (11th Cir. 2021). And the Tax Court has also held that a supervisor must approve the communication before it is delivered. *See id.* Essentially, the Tax Court reads the statute as follows: "No penalty shall be communicated to a taxpayer until such communication has been approved by the communicator's immediate supervisor."

We disagree with Kroner and the Tax Court. We conclude that the IRS satisfies Section 6751(b) so long as a supervisor approves an initial determination of a penalty assessment before it assesses those penalties. *See Laidlaw's Harley Davidson Sales, Inc. v. Comm'r*, 29 F.4th 1066, 1071 (9th Cir. 2022). Here, a supervisor approved Kroner's penalties, and they have not yet been assessed. Accordingly, the IRS has not violated Section 6751(b).

We believe this is the best reading of the statute for three reasons. First, we think it is more consistent with the meaning of the phrase "initial determination of such assessment," which is what must be approved. Second, we think it reflects the absence of any express timing requirement in the statute. And third, we think it is a workable reading in the light of the statute's purpose. We address each reason in turn.

*A.*

With respect to "what" the statute requires a supervisor to approve, we cannot equate an "initial determination of such assessment" with communications about proposed penalties. "Every

20-13902                Opinion of the Court                9

field of endeavor develops its own nomenclature," and a "specialized meaning should be expected" when a text addresses a "technical subject." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 6, at 73 (2012)). Accordingly, when words have acquired a legal meaning, we presume that they should be accorded that legal meaning. *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372, 1376 (11th Cir. 2022) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 615–616 (2001) (Scalia, J., concurring)).

In the context of the Internal Revenue Code, the word "assess" has an established legal meaning: it is the act of recording a taxpayer's liability, including any applicable penalties, onto the government's books. *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 9 (2015); *Hibbs v. Winn*, 542 U.S. 88, 100 (2004); *see also* MICHAEL I. SALTZMAN & LESLIE BOOK, IRS PRACTICE & PROCEDURE § 10.01 (June 2022 ed.). As the Supreme Court has recognized, an "'assessment' is 'essentially a bookkeeping notation.'" *Hibbs*, 542 U.S. at 100 (quoting *Laing v. United States,* 423 U.S. 161, 170, n. 13 (1976)); *see* 26 U.S.C. §§ 6203, 6303, 6321, 6331. That is, in the Tax Code, an assessment means "little more than the calculation or recording of a tax liability." *United States v. Galletti*, 541 U.S. 114, 122 (2004); *see, e.g.*, 26 U.S.C. §§ 6203 (methods of assessment), 6213 (restrictions on assessment in cases subject to pre-assessment Tax Court review), 6215 (assessment of deficiencies found by the Tax

Court), 6851 (authorization of special income tax assessments upon certain findings by the Secretary).

We presume that a word "bear[s] the same meaning throughout a text." *CSX Corp. v. United States*, 18 F.4th 672, 680 (11th Cir. 2021) (quoting SCALIA & GARNER, *supra*, § 25, at 170). Thus, it seems to us that the word "assessment" should carry its usual meaning in Section 6751(b)—the act of recording a tax liability. It does not mean a "communication that advises the taxpayer that penalties will be proposed." *Clay*, 152 T.C. at 249; *see Laidlaw's,* 29 F.4th at 1072 (disagreeing with the Tax Court's rule in *Clay*); *id.* at 1076-77 & n. 3 (Berzon, J., dissenting) (same).

In fact, when Congress wanted to address communication between the IRS and taxpayers in Section 6751, it did so explicitly. Section 6751 has two subsections, each imposing a different procedural requirement on the IRS. The first subsection requires that the IRS provide a "computation" of a covered penalty as part of "each notice of penalty under this title." 26 U.S.C. § 6751(a). The second—the one at issue in this case—concerns the "[a]pproval of assessment" and requires the IRS to obtain supervisory approval of "the initial determination of such assessment" before a covered penalty is assessed. *Id.* § 6751(b). Congress could have required supervisory approval of the notice of penalty. As it is, however, the statute's dual-track structure, with one subsection's requirements attaching to "notice[s] of penalty" and the other's to "initial determination[s] of . . . assessment," suggests that Congress meant for notices of penalty and initial determinations of assessment to refer

to different things. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) (negative inference canon).

In the context of assessment's specialized meaning, we think the IRS makes a "determination of such assessment" when it concludes that it has the authority and duty to assess penalties and resolves to do so. *See Determination*, MERRIAM-WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1986); *Determination*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1999); *Determination*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2012). The "initial" determination may differ depending on the process the IRS uses to assess a penalty. *See Initial*, MERRIAM-WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1986) ("of or relating to the beginning," "placed at the beginning," or "first"); *Initial*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1999) (same); *Initial*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2012) (same). But we are confident that the term "initial determination of such assessment" has nothing to do with communication and everything to do with the formal process of calculating and recording an obligation on the IRS's books.

## B.

Having found no support for Kroner's position in the "what" of Section 6751(b), we turn to the related question of "when." Again, we start with the text. Section 6751(b) states that "[n]o penalty . . . shall be assessed unless the initial determination of such assessment is personally approved . . . ." 26 U.S.C. § 6751(b). As we

have already explained, "assessed" refers to the ministerial function of recording a taxpayer's liability on the tax rolls, which is the last step before the IRS can collect the tax or penalty. *See* 26 U.S.C. § 6203; 26 C.F.R. § 301.6203-1.

Kroner argues, and the Tax Court held, that an IRS supervisor must approve the initial determination of assessment before any penalty is communicated to the taxpayer. As the Ninth Circuit has explained, "[t]he problem with [this] interpretation is that it has no basis in the text of the statute." *Laidlaw's*, 29 F.4th at 1072. "The statute does not make any reference to the communication of a proposed penalty to the taxpayer . . . ." *Id.* at 1072. An initial determination of an assessment "and a communication to a taxpayer . . . are two different things, and the statute addresses only the former." *Id.* at 1072 n. 6.

We likewise see nothing in the text that requires a supervisor to approve penalties at any particular time before assessment. The word "unless" is the only connection between the restricted activity—assessing—and the required procedure—approval. But "unless" establishes a condition precedent. It means "except" or "on the condition that." *See Unless*, MERRIAM-WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1986); *Unless*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1999); *Unless*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2012). "Unless" requires something, but it does not require that thing by a particular time.

Kroner points to the use of the word "initial" in "initial determination of such assessment" as support for his timing argument. But reading the word "initial" to establish a timing deadline for approval, and thus a timing restriction on assessment, smuggles the word from one statutory clause to another. The statute provides that "[n]o penalty . . . shall be assessed unless the initial determination of such assessment is personally approved." Stripped to bare bones, the statute directs that the IRS shall not take action X "unless" condition Y is met. X is the assessment of a covered penalty, and Y is the act of obtaining supervisory approval of the initial determination of assessment. The word "initial" modifies the phrase "determination of such assessment," all on the right side of the "unless" and all concerned with *what* must be approved to satisfy the statute's condition. "Initial" does not modify the phrase "no penalty under this title shall be assessed" on the opposite side of the "unless," which is the clause concerned with *when* in the process of a tax investigation the statute restricts the IRS's actions. In other words, "initial" describes *what* must be approved, not *when*.

It may be wise for the IRS, as it currently does, to have a supervisor approve proposed tax penalties at an early juncture—long before they are assessed. But the text of the statute does not impose an earlier deadline.[1]

---

[1] The IRS says that a timing requirement may arise from the statute's use of the word "approve" because a supervisor cannot "approve" something after she has lost the discretion to disapprove it. *See Laidlaw*, 29 F.4th at 1072 (accepting this position). We need not address this nuance because it is

14                    Opinion of the Court                    20-13902

## C.

Finally, we believe the statute is workable without the Tax Court's communication-based pre-assessment deadline for supervisory approval. The Tax Court developed this communication-based understanding of Section 6751(b) in reliance on *Chai v. Commissioner*, 851 F.3d 190, 218–20 (2d Cir. 2017). Although the court in *Chai* conceded that "[t]he provision contains no express requirement that the written approval be obtained at any particular time prior to assessment," *id.* at 218, it nonetheless established one. Finding an ambiguity in the phrase "initial determination of such assessment," the court turned to the statute's legislative history, which it found reflected a purpose to prevent IRS agents from using penalties as a bargaining chip during pre-assessment negotiations. Based on that understanding of the legislative history, the court reasoned that "the last moment the approval of the initial determination actually matters is immediately before the taxpayer files suit" in the Tax Court and that the "truly consequential moment of approval is the IRS's issuance of the notice of deficiency." *Id.* at 221. Therefore, with respect to penalties subject to Tax Court review, the court held that Section 6751(b)(1) "requires written approval of the initial penalty determination no later than the date the IRS issues the notice of deficiency . . . asserting such penalty." *Id.*

---

undisputed that the supervisor had discretion when she approved the penalties at issue here.

We believe there are several problems with Kroner's (and by extension the Tax Court's) reliance on *Chai*.

First, we think the *Chai* court missed an important aspect of the statute's purpose: it is not just about bargaining, it is also a check on the imposition of erroneous penalties. A statute's purpose should be defined both "precisely" and "concretely." SCALIA & GARNER, *supra*, § 2, at 56–57. To that end, a court must evaluate statutory purpose in terms of the full scope of a statute's application. To do any less risks "smuggl[ing] in the answer to the question before the decision-maker" by focusing the inquiry on a particular area of a statute's domain, to the exclusion of all others. *Id.* § 2, at 56. Here, supervisory review serves two functions: it ensures that penalties are imposed only "where appropriate," and it prevents penalties from being used only as bargaining chips during negotiation. Section 6751(b) serves its first function so long as a supervisor approves a penalty before the assessment is made; there is no need to set an earlier deadline. But the court in *Chai* did not discuss this first purpose at all. *See King v. Burwell*, 576 U.S. 473, 512 (2015) (Scalia, J., dissenting) ("[I]t is no more appropriate to consider one of a statute's purposes in isolation than it is to consider one of its words that way.").

The court in *Chai* may have missed this purpose by focusing exclusively on penalties that are subject to Tax Court review. As the court noted, those penalties receive a far more thorough pre-assessment appropriateness review in the Tax Court than a single supervisor is likely to give them under Section 6751(b). *See Chai*,

851 F.3d at 219 (reasoning that "[i]f deficiency proceeding review of penalty determinations were sufficient to deter or detect the IRS's improper leveraging of undue penalties, then Congress would not have felt compelled to enact" Section 6751(b)).  But, although this case and *Chai* concern penalties subject to review in the Tax Court, other penalties covered by Section 6751(b) cannot be challenged in the Tax Court. *See Graev v. Comm'r.*, 149 T.C. 485, 517–19 (2017) (Holmes, J., concurring in the result only). *Compare* 26 U.S.C. §§ 6672–6725 (providing for so-called "assessable penalties"), *with id.* §§ 6211–16 (cabining pre-assessment Tax Court review to taxes subject to the deficiency process and related penalties). As to these "assessable" penalties, Section 6751(b) provides a singularly important pre-assessment appropriateness check on an IRS agent's decision to assert a penalty—supervisory sign-off. *See generally Laidlaw's*, 29 F.4th 1066 (applying the statute to an assessable penalty without pre-assessment Tax Court review). There is thus every reason to think that this benefit is one of the statute's purposes. And, as to both "assessable" and non-assessable penalties, Section 6751(b) gives taxpayers the benefit of this additional safeguard so long as a supervisor approves before the assessment is made.

Second, we do not think the statute needs a pre-assessment deadline to reduce the use of improper penalties as "bargaining chip[s]." *Chai*, 851 F.3d at 219 (quoting S. Rep. No. 105-174, at 65 (1998)). The *Chai* court understood Section 6751(b)'s purpose to be about policing *pre-assessment* settlement negotiations. *See id.* at

219–20. But negotiations do not end after a penalty is assessed. Indeed, the IRS's probable next steps, issuing a tax lien and collecting via levy, provide taxpayers access to administrative and judicial remedies that may encourage the parties to continue negotiating long after assessment. *See* 26 U.S.C. §§ 6303(a), 6320(c), 6321, 6330(c), 6331. And a taxpayer may decide to pay the penalty asserted and then sue the government for a refund, resulting in a separate but related set of negotiations. *Id.* § 7422. Accordingly, to the extent a supervisor's approval prevents penalties from being imposed only as "bargaining chips," the statute works without a pre-assessment deadline for securing that approval.

But even assuming the *Chai* court was correct to focus on *pre-assessment* bargaining, Section 6751(b) still affects those negotiations without a pre-assessment deadline. Because of Section 6751(b), agents and taxpayers know during the pre-assessment negotiation process that an agent needs his supervisor's approval before any proposed penalty can be assessed. And any supervisor who approves an improper penalty—no matter when—will be on the record as approving the penalty just the same. The statute thus incentivizes supervisory involvement at an early stage in the negotiation process and disincentives agents from proposing improper penalties solely for the sake of negotiations. For these reasons, the court in *Chai* recognized in passing that, even when an agent does not obtain a written approval before communicating a penalty to a taxpayer, the statute can still have "its intended effect." *Chai*, 851 F.3d at 220. A different statute, one drafted to include a pre-

assessment deadline attaching to mere communications, would also affect the pre-assessment negotiation process. But that feature is not a prerequisite for the statute to function.

Finally, very few statutes pursue one purpose to the exclusion of all others, and we see no reason to make Section 6751(b) an exception. Although the legislative history suggests a desire to avoid the use of inappropriate penalties as bargaining chips, it also suggests that penalties "should . . . be imposed where appropriate." *Chai*, 851 F.3d at 219. In other words, Congress balanced two important governmental interests in enacting Section 6751(b). On the one hand, *inappropriate* penalties should not be imposed or used as bargaining chips. On the other, *appropriate* penalties should be assessed and collected. *Chai's* analysis of these competing interests leaned heavily on the former to the detriment of the latter when justifying its departure from the statutory text. And the Tax Court's rule requiring early supervisor sign-off prevents the IRS from assessing penalties that the Tax Court itself has otherwise found to be warranted. We are not persuaded that the statute requires this anomalous result.

## IV.

The Tax Court improperly concluded that Kroner's penalties were procedurally invalid for failure to comply with Section 6751(b). The portion of the Tax Court's order disallowing Kroner's penalties is **REVERSED**.

NEWSOM, Circuit Judge, concurring:

I concur in the Court's judgment and join its opinion. I write separately simply to underscore the perils of attempting to interpret statutes by reference to legislative history or their purported "purposes" more generally.

Parts III.A and III.B of the Court's opinion amply demonstrate that the Tax Court's interpretation of 26 U.S.C. § 6751(b) has no footing in the statutory text. That, to my mind, is sufficient reason to reverse. More generous than I might have been, the Court proceeds in Part III.C to consider—and then correctly reject—the suggestion that the Tax Court's decision might find some support in § 6751(b)'s supposed purpose, as divined from its legislative history.

The Court's persuasive takedown of the Tax Court's atextual, purposive reading highlights the pitfalls of intent-driven statutory interpretation. As is so often the case, the legislative history here is a grab-bag. As the Court notes, the Tax Court came to its view of § 6751(b) in reliance on the Second Circuit's decision in *Chai v. Commissioner*, 851 F.3d 190 (2d Cir. 2017), which, in turn, relied on a passage of a Senate Report suggesting that the provision was meant to ensure that "penalties should only be imposed where appropriate and not as a bargaining chip." *Id.* at 219 (quoting S. Rep. No. 105-174, at 65 (1998)). Based on the Report's "bargaining chip" reference, the Second Circuit—and the Tax Court here—concluded that written supervisory approval must precede the date

2                      Newsom, J., Concurring                    20-13902

on which the IRS initially issues a notice of deficiency. *See Chai*, 851 F.3d at 219-21.

Here's the problem, and it's an evergreen:  Without much effort, one can mine from § 6751(b)'s legislative history other—and sometimes conflicting—congressional "purposes."  For one, as the Court notes, perhaps the statute's overriding concern was simply ensuring accuracy by requiring managerial review of the determination made by a lone revenue agent at the bottom of the IRS totem pole.  *See* S. Rep. No. 105-174, at 65 ("The Committee believes that penalties should only be imposed where appropriate . . . ."); Maj. Op. at 15–16.  For another, it may be, as the Commissioner has contended, that just having the law on the books deters rogue revenue agents from threatening penalties as a "bargaining chip."  For yet another, it could be that the Senate Report's "bargaining chip" language doesn't relate to the supervisory-approval requirement *at all*.  As the Report itself emphasizes, before the adoption of § 6751(a)—which was enacted alongside § 6751(b)—the Tax Code did "not require the IRS to show how penalties [were] computed on the notice of penalty."  S. Rep. No. 105-174, at 65; *see also* 26 U.S.C. § 6751(a) ("The Secretary shall include with each notice of penalty under this title information with respect to the name of the penalty, the section of this title under which the penalty is imposed, and a computation of the penalty.").  Maybe, then, it was § 6751's new *notice* requirement—not its approval requirement— that Congress hoped might prevent the weaponization of penalties.

Armed with appropriate notice, a taxpayer could review the examiner's work and call "baloney" on unjustified penalties.

All of which is to say, yet again here, what I've said before elsewhere:  The legislative history—even if we consider it—is "utterly unenlightening."  *Oak Grove Res., LLC v. Director, OWCP*, 920 F.3d 1283, 1292 n.6 (11th Cir. 2019).  "Hence [my] quaint"—and continuing—"fixation on [the] enacted text."  *Id.*