# United States Tax Court

T.C. Memo. 2025-11

PARK LAKE II, LLC, PARK LAKE PARTNERS, LLC,
TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 12115-20.                           Filed January 30, 2025.

————

*Adam R. Young* and *Vivian D. Hoard*, for petitioner.

*Anne M. Wurtzebach, Abigail F. Dunnigan, Ashley M. Van Fleet*, and
*Steven Tillem*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*:  This case involves a charitable contribution deduction claimed for 2016 by Park Lake II, LLC (Park Lake), for the donation of a conservation easement.  The Internal Revenue Service (IRS or respondent) issued a notice of Final Partnership Administrative Adjustment (FPAA) disallowing the deduction and determining penalties. Currently before the Court is respondent's Motion for Partial Summary Judgment (Motion) contending that the IRS complied with the requirements of section 6751(b)(1) by securing timely supervisory approval of the penalties at issue.[1]  We agree and accordingly will grant the Motion.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**Served 01/30/25**

[*2]                                    *Background*

The following facts are derived from the pleadings, the parties' Motion papers, and the Declarations and Exhibits attached thereto. They are stated solely for purposes of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Park Lake is an Alabama limited liability company that is treated as a TEFRA partnership for Federal income tax purposes.[2] Its tax matters partner is Park Lake Partners, LLC (petitioner). Park Lake had its principal place of business in Alabama when the Petition was timely filed.

Park Lake acquired a tract of land in Montgomery County, Alabama. In September 2016, after petitioner had solicited investors, Park Lake granted to the National Farmer's Trust a conservation easement over the property. Park Lake timely filed Form 1065, U.S. Return of Partnership Income, for its 2016 tax year, claiming a charitable contribution deduction of $17.6 million for its donation of the easement.

The IRS selected Park Lake's 2016 return for examination. In June 2019 it assigned the case to Revenue Agent (RA) Andrea Rowan. RA Rowan was a member of Team 1676 in the IRS Large Business & International Division.

In March 2020, as the examination neared completion, RA Rowan recommended assertion of penalties against Park Lake under sections 6662 and 6662A. Her recommendations to this effect were set forth in a civil penalty lead sheet and accompanying workpapers, copies of which are attached to a Declaration she submitted in support of the Motion. RA Rowan affixed her digital signature to the civil penalty lead sheet at 9:34 a.m. on March 27, 2020, listing her title as "primary team coordinator."

On that date David Blackburn served as the acting team manager of Team 1676. John McGowan had served in that capacity previously, but he went on extended sick leave in February 2020. Mr. Blackburn was promoted to replace him and served as acting Team Manager from February 16 through June 6, 2020. Mr. Blackburn has submitted a

_____

[2] Before its repeal, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, governed the tax treatment and audit procedures for many partnerships, including Park Lake.

[*3] declaration to which he attached the Temporary Promotion Form authorizing him to serve as Supervisory Revenue Agent for Team 1676 from February 16 to June 6, 2020. Renee Bowers, the territory manager for Team 1676, has submitted a declaration confirming that all necessary steps were taken to have Mr. Blackburn properly promoted. He was thus RA Rowan's "immediate supervisor" on March 27, 2020.

At 1:43 p.m. and 1:45 p.m. that same day, Mr. Blackburn affixed his digital signatures on the civil penalty lead sheet and workpapers, respectively, listing his title as "team manager." Mr. Blackburn has averred that he was RA Rowan's "immediate supervisor," that RA Rowan "made the initial determination that the Proposed Penalties applied," and that he "approved of asserting the Proposed Penalties." Akisha Johnson, as the "issue manager" for the examination, also signed the penalty lead sheet and workpapers on March 27, 2020.

On June 23, 2020, RA Rowan mailed petitioner a packet of documents that included Form 4605–A, Examination Changes, which set forth her proposed adjustments and penalty recommendations. This packet of documents constituted the first formal communication to petitioner that the IRS intended to assert the penalties discussed above, as recommended by RA Rowan and approved by Mr. Blackburn. On July 8, 2020, the IRS issued petitioner an FPAA, including a Form 886–A, Explanation of Items, disallowing in toto the $17.6 million deduction Park Lake claimed for the easement and determining the aforementioned penalties.

Petitioner timely petitioned this Court for readjustment of partnership items. In his Answer filed January 26, 2021, respondent asserted, under section 6662A(c), an increased penalty of 30% for a reportable transaction understatement. IRS Senior Counsel Steven Tillem recommended assertion of that penalty, as set forth in the Answer. Mr. Tillem's immediate supervisor, Associate Area Counsel Abigail Foster Dunnigan, affixed her digital signature to the Answer at 3:48 p.m. on January 26, 2021.

## Discussion

### I. Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no

**[\*4]** genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. But where the moving party makes and properly supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d). We conclude that no material facts are in genuine dispute and that the question presented by respondent's Motion may be decided summarily.

II.    *Analysis*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In *Kroner v. Commissioner*, 48 F.4th 1272, 1276 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73, the U.S. Court of Appeals for the Eleventh Circuit held that "the IRS satisfies [s]ection 6751(b) so long as a supervisor approves an initial determination of a penalty assessment before [the IRS] assesses those penalties." The court interpreted the phrase "initial determination of [the] assessment" to refer to the "ministerial" process by which the IRS formally records the tax debt. *See id.* at 1278. Absent stipulation to the contrary, appeal of this case would lie to the Eleventh Circuit. *See* § 7482(b)(1)(E). We thus follow its precedent. *See Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).

A.    *Initial Determination*

The record establishes that RA Rowan recommended assertion of the section 6662 and 6662A penalties and secured timely approval for these penalties from her immediate supervisor, Mr. Blackburn. And the record establishes that Mr. Tillem recommended assertion of an increased penalty under section 6662A(c) and secured timely approval for this penalty from his immediate supervisor, Ms. Dunnigan. Petitioner does not dispute the latter proposition, so we will confine our discussion to the penalties recommended by RA Rowan.

Petitioner struggles mightily, but in vain, to gin up a dispute of material fact. Petitioner first challenges the status of RA Rowan as the

[*5] officer who made the "initial determination" to assert the penalties. In support of this position petitioner contends that the "IRS asserts penalties in all conservation easement audits." From this premise it concludes that someone other than the RA must be making the penalty determinations in conservation easement cases.

We have previously rejected the argument that penalties in fact recommended by an examining agent were in substance determined by someone else, e.g., by an unidentified higher level IRS official. *See Cattail Holdings, LLC v. Commissioner*, T.C. Memo. 2023-17, at *9–11. The "initial determination of [a penalty] assessment" is a formal action directed to a particular taxpayer by the Examination Division. *See Frost v. Commissioner*, 154 T.C. 23, 32 (2020); *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020). The word "determination" has "an established meaning in the tax context" and denotes an action "with a high degree of concreteness and formality." *Nassau River Stone, LLC v. Commissioner*, T.C. Memo. 2023-36, at *6 (quoting *Belair Woods*, 154 T.C. at 15). It is the duty of the examining agent to determine penalties, and RA Rowan was the relevant examining agent here. *See Cattail Holdings*, T.C. Memo. 2023-17, at *11.

Petitioner next asserts that RA Rowan "did not make the initial determination" of penalties on March 27, 2020, because John McGowan had supposedly done so 9 months previously, in a Risk Analysis Worksheet dated July 29, 2019. That worksheet, which Mr. McGowan signed, indicates that accuracy-related and gross valuation misstatement penalties "will be considered and assessed, if applicable, at the conclusion of the exam."

As explained above, the word "determination" has "an established meaning in the tax context" and denotes an action "with a high degree of concreteness and formality." *Belair Woods*, 154 T.C. at 15. An "initial determination" signifies a "consequential moment" of IRS action. *Ibid.* (quoting *Chai v. Commissioner*, 851 F.3d 190, 221 (2d Cir. 2017), *aff'g in part, rev'g in part* T.C. Memo. 2015-42). Mr. McGowan's notation—that penalties "will be considered and assessed, if applicable, at the conclusion of the exam"—does not constitute the "determination" of any penalty. He was simply reciting the workplan the exam team would follow during the ordinary course of the audit. This preliminary observation cannot possibly constitute the "initial determination of [a penalty] assessment" within the meaning of section 6751(b)(1). *See Belair Woods*, 154 T.C. at 9 ("The statute requires approval for the initial

[*6] *determination* of penalty assessment, not for a tentative proposal or hypothesis.").[3]

Finally, petitioner asserts that "a disputed issue of fact" exists because "metadata contained within the penalty lead sheet" indicate that "an IRS employee other than Ms. Rowan prepared such lead sheet." Within the IRS every employee is assigned a Standard Employee Identification Number (SEID). Metadata on the penalty lead sheet indicate that an employee with an SEID of N2GDB created the lead sheet. This SEID apparently does not belong to RA Rowan, but rather to another IRS employee, Thomas Jenkins.

We think petitioner is again grasping at straws. In deciding whether the IRS satisfied the requirements of section 6751(b)(1), it is inconsequential who initially *created* the electronic document on which the penalty recommendation and approval were subsequently recorded. What matters is the identity of the RA who made the recommendation and of the supervisor who approved it. *See* Order at 8, *Desoto Holdings LLC v. Commissioner*, No. 13013-20 (T.C. June 24, 2024), No. 108 ("The statute does not require the individual making the determination to create a document. The statute requires that the initial determination be approved in writing by the supervisor of the individual making the determination.").

Petitioner does not contest the authenticity of RA Rowan's signature on the penalty lead sheet, which she affixed digitally using Adobe

---

[3] Petitioner alternatively urges that RA Rowan should not be viewed as having made the "initial determination" because she signed the relevant documents on March 27, 2020, 4 days before the in-house IRS appraiser finalized his "appraisal review" on March 31. In advancing this argument petitioner seems to be contending that RA Rowan did not have enough information at her disposal to know whether a penalty was justified. But she had been conducting the examination for 9 months and was necessarily acquainted with the relevant facts. Park Lake claimed a $17.6 million deduction for the easement, even though its basis in the underlying land was apparently less than $1.2 million. The primary position in the FPAA was that the value of the easement was zero, in which case valuation misstatement penalties would obviously apply. In any event petitioner misapprehends the statutory requirements: Section 6751(b) is captioned "Approval of Assessment," not "Explanation of Assessment." *See Pickens Decorative Stone, LLC v. Commissioner*, T.C. Memo. 2022-22, 123 T.C.M. (CCH) 1127, 1130. We have repeatedly rejected any suggestion that a penalty approval form or other document must "demonstrate the depth or comprehensiveness of the supervisor's review." *Belair Woods*, 154 T.C. at 17. We do not second-guess the extent of the RA's or the supervisor's deliberations about whether penalties should be imposed. We confine our search to seeking evidence of written supervisory approval. *See Raifman v. Commissioner*, T.C. Memo. 2018-101, 116 T.C.M. (CCH) 13, 27–28.

[*7] software. And RA Rowan has submitted a declaration in which she avers under penalty of perjury that she initially determined the penalties in question and that the penalty lead sheet bears her digital signature. The fact that someone else digitally created the document on which she ultimately recorded her recommendation is irrelevant in ascertaining whether the statutory requirements have been met.

In sum, petitioner's speculation that RA Rowan, the lead examiner for the Park Lake audit, did not make the "initial determination" to assert the penalties against Park Lake does not establish a genuine dispute of material fact. *See* Rule 121(d). The penalty lead sheet and RA Rowan's declaration establish that she made the recommendation to assert the penalties set forth on that form.

B.    *Timely Approval in Writing*

Under a literal application of the standard enunciated by the Eleventh Circuit in *Kroner v. Commissioner*, 48 F.4th at 1279–81, supervisory approval could seemingly be secured at any moment before actual assessment of the tax, which has not yet occurred. But the Eleventh Circuit left open the possibility that supervisory approval in some cases might need to be secured sooner—before the supervisor "has lost the discretion to disapprove" assertion of the penalty. *See id.* at 1279 n.1; *cf. Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022) (treating supervisory approval as timely if secured before the penalty is assessed or "before the relevant supervisor loses discretion whether to approve the penalty assessment"), *rev'g and remanding* 154 T.C. 68 (2020); *Chai v. Commissioner*, 851 F.3d at 220 (concluding that supervisory approval must be obtained at a time when "the supervisor has the discretion to give or withhold it").

The penalties were approved by Mr. Blackburn on March 27, 2020. He digitally signed the penalty lead sheet and accompanying workpapers as RA Rowan's "Team Manager." Mr. Blackburn has submitted a declaration to which he attached the Temporary Promotion Form authorizing him to serve as Supervisory Revenue Agent for Team 1676 from February 16 to June 6, 2020. We conclude that Mr. Blackburn was RA Rowan's "immediate supervisor" on March 27, 2020, when she recommended the penalties and he approved them. *See Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021) (holding that the "immediate supervisor" is the person who supervises the agent's substantive work on an examination).

**[\*8]** The FPAA was issued on July 8, 2020. As of March 27, 2020, the date on which Mr. Blackburn supplied his approval, the IRS examination remained at a stage where he had discretion to approve or disapprove the penalty recommendations. *See Kroner v. Commissioner*, 48 F.4th at 1279 n.1. Therefore, under the reading of *Kroner* most favorable to petitioner, the IRS complied with section 6751(b)(1) because Mr. Blackburn timely approved the relevant penalties and did so in writing.

Once again, petitioner vainly probes for a dispute of material fact. Petitioner asserts that Mr. Blackburn was not RA Rowan's immediate supervisor because "numerous documents contained within Respondent's administrative file show that [other persons] supervised [her] substantive work during the Partnership's examination." Contrary to petitioner's speculation, the record shows that Mr. Blackburn was promoted to acting team manager of Team 1676 on February 16, 2020, and served in that capacity until June 6, 2020. Mr. Blackburn signed the penalty lead sheet on March 27, 2020, and he was RA Rowan's immediate supervisor at that time. It is a fact of life in the IRS (as in any large organization) that staff members change jobs, are reassigned, get promoted, or retire. The fact that RA Rowan may have had a different supervisor earlier or later in the examination is inconsequential. *See Belair Woods*, 154 T.C. at 17; *Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 84–86 (2019).

To reflect the foregoing,

*An order will be issued granting respondent's Motion for Partial Summary Judgment.*