# United States Tax Court

T.C. Memo. 2025-74

SAND VALLEY HOLDINGS, LLC, SAND VALLEY
INVESTORS, LLC, TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 12141-20.                                Filed July 14, 2025.

———————

*Vivian D. Hoard* and *Meeren S. Amin*, for petitioner.

*Rion A. Daley*, *Olivia M. Rembach*, *Rachel L. Gregory*, *Laurel B. Stout*, and *Brian R. Cullin*, for respondent.


## MEMORANDUM OPINION

LAUBER, *Judge*: This case involves a charitable contribution deduction claimed for 2016 by Sand Valley Holdings, LLC (Sand Valley), for the donation of a conservation easement. The Internal Revenue Service (IRS or respondent) issued a Notice of Final Partnership Administrative Adjustment (FPAA) disallowing the deduction and determining penalties. Currently before the Court is respondent's Motion for Partial Summary Judgment (Motion) contending that the IRS complied with the requirements of section 6751(b)(1) by securing timely supervisory approval of the penalties at issue.[1] We agree and accordingly will grant the Motion.

———————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]**                                    *Background*

The following facts are derived from the Pleadings, the parties' Motion papers, and the Declarations and Exhibits attached thereto. They are stated solely for purposes of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Sand Valley is a Georgia limited liability company that is treated as a TEFRA[2] partnership for Federal income tax purposes. Its tax matters partner is Sand Valley Investors, LLC (petitioner). Sand Valley had its principal place of business in Georgia when the Petition was timely filed. Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Eleventh Circuit. *See* § 7482(b)(1)(E).

Sand Valley acquired a tract of land in Jefferson County, Georgia. In December 2016, after petitioner solicited investors, Sand Valley granted to the Foothills Land Conversancy a conservation easement over the property. Sand Valley timely filed Form 1065, U.S. Return of Partnership Income, for its 2016 tax year, claiming a charitable contribution deduction of $35.38 million for its donation of the easement.

The IRS selected Sand Valley's 2016 return for examination. In September 2018 the case was assigned to Revenue Agent (RA) Anthony Bryant. His case activity record shows that he commenced work on the examination in October 2018 and devoted 230 hours to the audit, which lasted 15 months.

RA Bryant was a member of Group 1573 in the IRS Small Business/Self-Employed Division. At that time Supervisory RA Margaret McCarter served as acting group manager of Group 1573. She was thus Mr. Bryant's immediate supervisor.

On October 7, 2019, Ms. McCarter sent an email to 11 members of Group 1573, including RA Bryant. In that email she reminded them that they needed to include, in the "other information" section of Form 4605–A, Examination Changes, "all specific code sections regarding penalties." She added: "Please double check all code sections and language . . . for accuracy" before issuing Form 4605–A.

---

[2] Before its repeal, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, governed the tax treatment and audit procedures for many partnerships, including Sand Valley.

**[\*3]** On January 16 and 17, 2020, as the examination neared completion, RA Bryant prepared a draft Form 886–A, Explanation of Items. In that document he proposed to disallow the charitable contribution deduction in toto because Sand Valley "ha[d] offered no credible evidence for the value of the conservation easement and therefore ha[d] failed to establish a value greater than $0." He also recommended the assertion of various penalties against Sand Valley. His recommendations to this effect were set forth in the Form 886–A and separately on a civil penalty approval form. Copies of both documents are attached to the Declaration he submitted in support of the Motion.

RA Bryant's case activity record indicates that he submitted the Form 886–A and penalty approval form to Ms. McCarter and that she approved the penalties on January 17. RA Bryant initially intended to hold off forwarding these documents for review by IRS Chief Counsel until he had received an appraisal review report from William Hood, an in-house appraiser employed by the IRS. However, petitioner had not agreed to an extension of the limitations period on assessment. *See* § 6501(a), (c)(4). Because limited time remained before that period would expire, RA Bryant decided to submit his draft documents to Chief Counsel for review before receiving Mr. Hood's report.

At all relevant times Olivia Rembach was an attorney in the IRS Office of Chief Counsel. In November 2018 she was assigned as senior counsel to assist with the Sand Valley examination. On January 21, 2020, RA Bryant sent his draft Form 886–A and other workpapers to Ms. Rembach for review. RA Bryant indicated that Mr. Hood's appraisal review was still a month or two away from being completed. He asked whether he could proceed with the position recommended in the Form 886–A, i.e., denial of the charitable contribution deduction in toto, before receiving the final version of Mr. Hood's report.

On January 28 and 29 Ms. Rembach communicated about the draft documents with other attorneys in the Office of Chief Counsel. They noted that, if RA Bryant needed to proceed without Mr. Hood's report, then the case "should be treated as a case without an [IRS] appraiser." In that event, they indicated that the easement value should be listed as zero, as RA Bryant had recommended in his draft Form 886–A. However, they noted that RA Bryant would need to "forward a revised report" if he received an appraisal review that placed a positive value on the easement. Ms. Rembach forwarded those emails to RA Bryant.

**[\*4]**    On February 10, 2020, RA Bryant received approval to proceed without Mr. Hood's report.  He prepared an updated Form 886–A, which deleted references to the appraisal review.  The Form 886–A, like the civil penalty approval form, recommended assertion of a 40% penalty under section 6662(h) and (in the alternative) 20% penalties under sections 6662(b)–(e) and 6662A.[3]  RA Bryant has averred under penalty of perjury that he "made the initial determination" to assert the penalties.

Ms. McCarter, RA Bryant's group manager, approved assertion of these penalties for a second time on February 10, 2020.  She did so by affixing her digital signature to the civil penalty approval form using Adobe software.  Ms. McCarter has averred under penalty of perjury that she was the "immediate supervisor" of RA Bryant, who made the "initial determination" to assert the aforementioned penalties, and that she "personally approved, in writing, the initial determination."

On February 11, 2020, RA Bryant mailed petitioner a packet of documents that included Form 886–A, which set forth his proposed adjustments and penalty recommendations.  This packet of documents constituted the first formal communication to petitioner that the IRS intended to assert the penalties discussed above, as recommended by RA Bryant and approved by Ms. McCarter.

On March 9, 2020, RA Bryant received the appraisal review report from Mr. Hood.  That report determined a value of zero for the easement, as RA Bryant had concluded in the Form 886–A.  He accordingly had no need to revise the Form 886–A or adjust his workpapers to take Mr. Hood's conclusion into account.

On July 7, 2020, the IRS issued petitioner an FPAA disallowing in toto the $35.38 million deduction Sand Valley claimed for the easement and determining the aforementioned penalties.  Petitioner timely petitioned this Court for readjustment of partnership items.  On March 13, 2025, respondent filed a Motion for Partial Summary Judgment, seeking a ruling that he has sufficiently complied with the section 6751(b)(1) requirements for supervisory approval of all penalties at issue.

---

[3] Respondent has since conceded the section 6662A penalty.  We accordingly need not consider whether the IRS secured timely supervisory approval for it.

**[\*5]**                                      *Discussion*

I.     *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. But where the moving party makes and properly supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d). We conclude that no material facts are in genuine dispute and that the question presented by respondent's Motion may be decided summarily.

II.     *Analysis*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In a TEFRA case such as this, "the Commissioner must secure written supervisory approval for the penalty before issuing an FPAA to the partnership." *Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 83 (2019). If supervisory approval is obtained by that date, our Court has held that the partnership must establish that the approval was untimely, i.e., "that there was a formal communication of the penalty [to the partnership] before the proffered approval [was secured]." *See Frost v. Commissioner*, 154 T.C. 23, 35 (2020).

Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Eleventh Circuit, and we thus follow its precedent. *See* § 7482(b)(1)(E); *Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). The Eleventh Circuit has interpreted the term "assessment" to refer to the "ministerial" process by which the IRS formally records the tax debt. *Kroner v. Commissioner*, 48 F.4th 1272, 1278 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73. The IRS thus satisfies section 6751(b)(1) "so long as a

[*6] supervisor approves an initial determination of a penalty assessment before [the IRS] assesses those penalties." *See Kroner v. Commissioner*, 48 F.4th at 1276.

Under a literal application of the standard enunciated by the Eleventh Circuit in *Kroner*, supervisory approval could seemingly be secured at any moment before actual assessment of the tax, which has not yet occurred. But the Eleventh Circuit left open the possibility that supervisory approval in some cases might need to be secured sooner, i.e., before the supervisor "has lost the discretion to disapprove" assertion of the penalty. *See id.* at 1279 n.1; *cf. Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022) (treating supervisory approval as timely if secured before the penalty is assessed or "before the relevant supervisor loses discretion whether to approve the penalty assessment"), *rev'g and remanding* 154 T.C. 68 (2020); *Chai v. Commissioner*, 851 F.3d 190, 220 (2d Cir. 2017) (concluding that supervisory approval must be obtained at a time when "the supervisor has the discretion to give or withhold it"), *aff'g in part, rev'g in part* T.C. Memo. 2015-42.

The record establishes that RA Bryant, who conducted the Sand Valley examination, made the "initial determination" to assert the penalties. Respondent has supplied copies of the civil penalty approval form and a declaration from RA Bryant averring that he "conduct[ed] the examination of [Sand Valley]" and "made the initial determination" to assert the penalties. The penalty lead sheet explicitly states that it was prepared by "Examiner" Anthony Bryant.

The record establishes that Ms. McCarter was RA Bryant's "immediate supervisor" at all relevant times. RA Bryant has averred under penalty of perjury that Ms. McCarter was his immediate supervisor during the examination. Ms. McCarter has likewise averred under penalty of perjury that she was RA Bryant's "immediate supervisor" during the Sand Valley audit. Her signature appears on the penalty lead sheet, a copy of which is attached to her Declaration. We conclude that Ms. McCarter was RA Bryant's "immediate supervisor" within the meaning of section 6751(b)(1). *See Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021) (holding that the "immediate supervisor" is the person who supervises the agent's substantive work on an examination); *Park Lake II, LLC v. Commissioner*, T.C. Memo. 2025-11, at *2–3, *7–8 (holding that signature of acting team manager on a penalty approval form satisfied the statutory requirements); *Salacoa Stone Quarry, LLC v. Commissioner*, T.C. Memo. 2023-68, at *6 (same).

[*7]  The record establishes that Ms. McCarter timely approved the penalties. She affixed her electronic signature to the penalty lead sheet on February 10, 2020, using Adobe software. On that form she listed her title as "Group Manager." She has averred under penalty of perjury that she "personally approved, in writing, the determination to assert [the aforementioned] penalties."

The FPAA was issued on July 7, 2020. As of February 10, 2020, the date on which Ms. McCarter supplied her approval, the IRS examination remained at a stage where she had discretion to approve or disapprove the penalty recommendations. Therefore, under the reading of *Kroner* most favorable to petitioner, the IRS complied with section 6751(b)(1) in this case because Ms. McCarter timely approved the relevant penalties and did so in writing.

Petitioner struggles in vain to gin up a dispute of material fact. Petitioner first challenges the status of RA Bryant, who conducted the Sand Valley examination, as the person who made the "initial determination" to assert the penalties. According to petitioner, the "initial determination" was made by Ms. McCarter, his immediate supervisor.

In so asserting, petitioner cites the email Ms. McCarter sent to 11 members of Group 1573, including RA Bryant, on October 7, 2019. In that email she told them that they needed to include, in the "other information" section of any Form 4605–A they prepared, "all specific code sections regarding penalties." She added: "Please double check all code sections and language . . . for accuracy" before issuing Form 4605–A.

This argument is frivolous. In this email Ms. McCarter was not directing any member of her team to assert any particular penalty against any particular taxpayer. She was simply reminding them that the documents they prepared needed to be accurate, unambiguous, and consistent with IRS formal specifications.

We have previously rejected the argument that penalties in fact recommended by an examining agent were in substance determined by someone else. *See Cattail Holdings, LLC v. Commissioner*, T.C. Memo. 2023-17, at *9–11. The "'initial determination' of a penalty assessment" is a formal action directed to a particular taxpayer by the Examination Division. *See Frost*, 154 T.C. at 32 (quoting *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020)). The word "determination" has "an established meaning in the tax context" and denotes an action "with a high degree of concreteness and formality." *Nassau River Stone, LLC v.*

[*8] *Commissioner*, T.C. Memo. 2023-36, at *6 (quoting *Belair Woods*, 154 T.C. at 15). It is the duty of the examining agent to determine penalties, and RA Bryant was the relevant examining agent here. *See Cattail Holdings*, T.C. Memo. 2023-17, at *11.

RA Bryant has averred under penalty of perjury that he made the "initial determination" to assert the penalties. Ms. McCarter has likewise averred under penalty of perjury that RA Bryant made the "initial determination." As the group manager of Group 1573, Ms. McCarter was obviously in a position to know which member of her team had recommended the penalties she was approving. The email she had sent five months previously, reminding her team to "include all specific code provisions" on Forms 4605–A and to "double check all code sections and language . . . for accuracy," does not constitute the "determination" of any penalty. It was technical advice to ensure that the 11 members of her team complied with formal requirements and used consistent wording in their documents.

Petitioner next contends that Ms. Rembach (or someone else in the Office of Chief Counsel) made the "initial determination" because they permitted RA Bryant to proceed without an appraisal. In petitioner's view, that permission was tantamount to a determination by Chief Counsel that the value of the easement was zero. And that alleged determination supposedly dictated, as a matter of simple arithmetic, the assertion of a 40% penalty for a gross valuation misstatement. *Cf. Hancock Cnty. Land Acquisitions, LLC v. Commissioner*, T.C. Memo. 2025-50, at *10–11 (rejecting a similar argument).

Again we disagree. When IRS counsel received the FPAA package on January 21, 2020, RA Bryant had already proposed to value the easement at zero, had already recommended the penalties shown on the penalty approval form (including the penalty for gross valuation misstatement), and had already received Ms. McCarter's approval to assert those penalties. Nowhere in the email communications petitioner cited does any Chief Counsel attorney recommend the assertion of penalties against Sand Valley, for valuation misstatement or otherwise. Rather, those attorneys advised RA Bryant that he could proceed without an appraisal, but that he might need to revise his report later if Mr. Hood delivered an appraisal that placed a positive value on the easement.

**[\*9]** That advice was purely technical in nature, designed to ensure that the FPAA met all formal requirements.[4]

The record shows that RA Bryant consulted with Chief Counsel about the technical requirements for the FPAA package. The advice he received did not constitute the "initial determination of [a penalty] assessment" within the meaning of section 6751(b)(1). *See Nassau River Stone*, T.C. Memo. 2023-36, at \*6–7 (citing *Belair Woods*, 154 T.C. at 9). The penalty approval form, corroborated by the averments of RA Bryant and Ms. McCarter, establishes that RA Bryant made the "initial determination" to assert the penalties set forth on that form. Although petitioner dismisses these averments as "self-serving," it offers nothing but speculation to support its position. Such speculation is not enough to establish a genuine dispute of material fact. *See* Rule 121(d).

Finally, assuming arguendo that RA Bryant did make the "initial determination," petitioner contends that Ms. McCarter—although his immediate supervisor—was not the proper person to approve the penalties. Rather, petitioner asserts that the Secretary has designated a higher level official—a Director of Field Operations—to approve penalties of the sort involved here.

Petitioner is again grasping at straws. Section 6751(b)(1) provides that the initial determination of a penalty assessment must be approved by "the immediate supervisor of the individual making such determination *or* such higher level official as the Secretary may designate." (Emphasis added.) Suffice it to say that the word "or" permits approval by either type of official. *See Ivey Branch Holdings, LLC v. Commissioner*, T.C. Memo. 2025-63, at \*8; *Goddard v. Commissioner*, T.C. Memo. 2022-96, 124 T.C.M. (CCH) 187, 197. Ms. McCarter signed the penalty approval form and has averred that she was "RA Bryant's immediate supervisor during the entirety of the examination of Sand Valley." *See Park Lake II, LLC*, T.C. Memo. 2025-11, at \*2–3, \*7–8 (holding that the signature of the acting team manager on a penalty

---

[4] "Area Counsel must approve all FPAAs before issuance." *Internal Revenue Manual* (IRM) 4.31.2.7.2.5(1)(d) (May 10, 2019). It is well established that it is among the duties of Chief Counsel attorneys to advise revenue agents and review their work. *See* IRM 33.1.2.7.4 (June 2, 2014) (dealing with Chief Counsel's authority in reviewing notices of deficiency); *id.* 33.1.2.8(1) (Oct. 17, 2016) ("The role of the Field Counsel is to advise whether a deficiency notice should be issued, and if so, to make recommendations concerning the issues to be asserted . . . .").

**[\*10]** approval form satisfied the statutory requirements); *Salacoa Stone Quarry*, T.C. Memo. 2023-68, at \*6 (same).

Petitioner asks that we defer decision on this question pending further discovery to obtain all "documents electronically with metadata intact." We are mindful that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Tr. Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988). But discovery must be relevant to "the subject matter involved in the pending case." Rule 70(b)(1); *see Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947); *Caney v. Commissioner*, T.C. Memo. 2010-90, 99 T.C.M. (CCH) 1366, 1368.

The discovery petitioner seeks is irrelevant to the resolution of the question presented by respondent's Motion. *See* Rule 121(e); *Caney*, 99 T.C.M. (CCH) at 1368 (considering whether "further discovery would likely yield any fact essential to [the nonmoving party's] opposition to the [summary judgment] motion"). The record conclusively establishes that RA Bryant made the "initial determination" to assert the penalties in question and obtained timely supervisory approval from Ms. McCarter. By propounding discovery seeking communications among members of the IRS exam team, petitioner seeks improperly to look behind the statements and signatures appearing on the face of the forms. *See Sparta Pink Prop., LLC v. Commissioner*, T.C. Memo. 2022-88, 124 T.C.M. (CCH) 121, 124; *Patel v. Commissioner*, T.C. Memo. 2020-133, 120 T.C.M. (CCH) 211, 214; *Raifman v. Commissioner*, T.C. Memo. 2018-101, 116 T.C.M. (CCH) 13, 28. We will not condone fishing expeditions of this sort.

We have regularly decided section 6751(b)(1) questions on summary judgment on the basis of IRS records and declarations from relevant IRS officers. *See, e.g., Sand Inv.*, 157 T.C. at 142; *Long Branch Land, LLC v. Commissioner*, T.C. Memo. 2022-2, 123 T.C.M. (CCH) 1008, 1009. And absent some irregularity in the documentary record, we have rejected the notion that examining agents and their supervisors must be subjected to cross-examination. *See Thompson v. Commissioner*, T.C. Memo. 2022-80, at \*8; *Raifman*, 116 T.C.M. (CCH) at 27–28 (holding that cross-examination "would be immaterial and wholly irrelevant to ascertaining whether [the IRS] complied with the written supervisory approval requirement"). There is no irregularity in the documentary record here, and it conclusively establishes that the requirements of section 6751(b)(1) were met.

**[*11]**  To reflect the foregoing,

*An order will be issued granting respondent's Motion for Partial Summary Judgment.*