T.C. Memo. 2010-90

UNITED STATES TAX COURT

JOHN J. AND DEBRA M. CANEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21691-08L.                    Filed April 27, 2010.

<u>Ronald F. Hood</u>, for petitioners.

<u>Daniel P. Ryan</u>, for respondent.

MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  This case is before us to review a Notice
of Determination Concerning Collection Action(s) Under Section
6320 and/or 6330 (the notice of determination) issued by
respondent's Appeals Office (Appeals).  That notice concerns
petitioners' 2004 and 2005 Federal income tax liabilities, and it
sustains an Appeals officer's determination that a notice of

intent to levy (the levy notice) and a notice of Federal tax lien (the lien notice) for those years should stand.  We review the notice of determination under sections 6320(c) and 6330(d)(1).[1] Respondent has moved for summary judgment (the motion). Petitioners object (the response).  We shall grant the motion.

We may grant summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b).  In pertinent part, Rule 121(d) provides:  "When a motion for summary judgment is made and supported * * *, an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response * * * must set forth specific facts showing that there is a genuine issue for trial."

In support of the motion, respondent relies on the pleadings, the declaration of Appeals Officer Lisa S. Boudreau, the Appeals official assigned to petitioners' appeal under sections 6320 and 6330, and the relevant documents in respondent's administrative file from petitioners' collection due process hearing.  Respondent has moved for summary judgment, and so we infer facts in a manner most favorable to petitioners.

---

[1]Unless otherwise stated, section references are to the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

See, e.g., <u>Anonymous v. Commissioner</u>, 134 T.C. ___, ___ (2010) (slip op. at 3-4) (citing <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985)).

## Background

Petitioners filed joint Federal income tax returns for their taxable (calendar) years 2004 and 2005. Both returns showed amounts due to respondent that remain unpaid.[2] In October 2007, respondent issued petitioners the levy notice. In December 2007, respondent issued petitioners the lien notice. Petitioners timely requested collection due process hearings regarding both the levy notice and the lien notice, and they indicated that they intended to propose collection alternatives in the form of an offer-in-compromise and, in response to the levy notice, an installment agreement.[3] Petitioners also requested that respondent withdraw the lien. Petitioners timely requested face-to-face hearings instead of telephone conferences. Petitioners' levy hearing was assigned to Ms. Boudreau.[4] In April 2008, Ms. Boudreau had a telephone conference with petitioners' counsel, Ronald F. Hood, during which Mr. Hood verified that the telephone

---

[2]Although petitioners concede that fact, the levy notice seems to contradict it. For 2005, the levy notice lists an assessed balance, accrued interest, and a late payment penalty, but, for 2004, it lists only a late payment penalty.

[3]Petitioners did not pursue the installment agreement because they judged the installment payments to be too great.

[4]We discuss the lien hearing in sec. IV. of this report.

conference would be sufficient and that petitioners no longer requested a face-to-face hearing.

Soon thereafter, petitioners filed an offer-in-compromise of $27,000 (offering that amount in compromise of total liabilities, determined from respondent's Offer In Compromise Financial Analysis Report, of $96,693), which respondent ultimately rejected on the ground that, because of expected future income, they could pay their liabilities in full. After that, Appeals issued the notice of determination sustaining both the levy notice and the lien notice. The notice of determination was signed by Appeals Team Manager Matthew N. McLaughlin but is based on Ms. Boudreau's determination to sustain the collection actions. Ms. Boudreau made that determination because she believed that petitioners had the ability to pay fully their outstanding liabilities through an installment agreement or the combination of an installment agreement and the liquidation of assets. In response to the notice of determination, petitioners timely filed the petition. When they filed the petition, petitioners lived in Massachusetts.

Discussion

I. Introduction

Petitioners raise several objections to the motion. Nonetheless, petitioners fail to show that there is any genuine issue as to any material fact. See Rule 121(b).

Petitioners do not challenge their underlying liabilities. Accordingly, we must decide only whether Ms. Boudreau abused her discretion when she rejected petitioners' offer-in-compromise and determined that the levy notice and the lien notice should stand. See, e.g., Sego v. Commissioner, 114 T.C. 604, 610 (2000). That is, we must decide whether her determination was arbitrary, capricious, or without sound basis in fact or law. See, e.g., Giamelli v. Commissioner, 129 T.C. 107, 111 (2007). We find that Ms. Boudreau did not abuse her discretion. We address petitioners' arguments to the contrary below.

## II. The Timeliness of the Motion

Petitioners argue that the motion "is premature because formal discovery is still ongoing". Petitioners cite Rule 121(b), which states that we may grant summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Petitioners assert that, while formal discovery is ongoing, we cannot determine "whether there are additional genuine issues of material facts".

Petitioners, however, have failed to read Rule 121 in its entirety. In pertinent part, Rule 121(e) provides that, if the affidavits of the party opposing the motion for summary judgment

show that the party cannot present facts essential to justify that party's opposition, then the Court may deny the motion. Petitioners, however, fail to show that further discovery would likely yield any fact essential to their opposition to the motion. See Countryside Ltd. Pship. v. Commissioner, T.C. Memo. 2008-3. Thus, summary judgment is not inappropriate simply because discovery is ongoing.

III. The Rejection of the Offer-in-Compromise

Section 7122(a) authorizes the Secretary to compromise a taxpayer's Federal income tax liability. The grounds for compromise of a tax liability include doubt as to collectibility. Sec. 301.7122-1(b)(2), Proced. & Admin. Regs. Doubt as to collectibility exists in any case in which the taxpayer's assets and income are less than the full amount of the liability. Id. Generally, under the Commissioner's administrative guidelines, Appeals will accept an offer-in-compromise because of doubt as to collectibility only if the offer reflects the reasonable collection potential; that is, the amount the Commissioner could reasonably collect through other means, including administrative and judicial collection remedies. See Internal Revenue Manual (IRM) pt. 5.8.4.4(2) (Sept. 1, 2005); see also Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517. When the Appeals officer has followed the Commissioner's administrative guidelines to ascertain a taxpayer's reasonable collection potential and has

rejected the taxpayer's offer-in-compromise on that ground, we generally have found no abuse of discretion. See McClanahan v. Commissioner, T.C. Memo. 2008-161; Lemann v. Commissioner, T.C. Memo. 2006-37.

A.  Petitioners' Reasonable Collection Potential

Petitioners argue that Ms. Boudreau, in calculating their reasonable collection potential, abused her discretion by incorrectly calculating their income, their living expenses, and their assets.  For purposes of deciding the motion, we shall use petitioners' valuations of their assets.[5]  We find that Ms. Boudreau did not abuse her discretion in calculating either petitioners' income or petitioners' expenses.  Either of those findings is sufficient to justify a rejection of petitioners' offer-in-compromise.  The two findings are in the alternative.[6]

---

[5]Specifically, we assume that petitioners' net realizable equity in assets is not $50,185, but is $29,965.  We note that petitioners have thus conceded that their assets are worth more than their offer-in-compromise ($27,000).

[6]The reason is that, if we find that Ms. Boudreau appropriately calculated petitioners' income, then, even if we allow petitioners all their claimed expenses, petitioners would nonetheless have enough additional income to pay their liabilities in full.  Likewise, if we find that Ms. Boudreau appropriately calculated petitioners' expenses, then, even if we use petitioners' numbers to estimate their future income, petitioners would nonetheless have enough additional income to pay their liabilities in full.

1.  Petitioners' Total Income

Petitioners argue that Ms. Boudreau abused her discretion by inappropriately calculating Mrs. Caney's income.  Mrs. Caney is a commissioned real estate agent whose income varies from year to year.  According to the Commissioner's administrative guidelines, an Appeals officer may average the income of a commissioned sales person to calculate income.  IRM pt. 5.8.5.5(6) (Sept. 1, 2005).  Ms. Boudreau thus calculated Mrs. Caney's income by averaging her income from 2005 ($99,669), 2006 ($121,749), 2007 ($36,083), and the first 6 months of 2008 ($21,216).[7]  Petitioners argue that, in the light of the downturn in the real estate market, Ms. Boudreau abused her discretion by using Mrs. Caney's income from 2005 and "the halcyon days of 2006".  Petitioners argue that Ms. Boudreau herself was uncertain whether averaging 2005, 2006, and 2007 was "appropriate given the market" and that she acknowledged that averaging all 3 years would be "bad" for petitioners. (At petitioners' request, Ms. Boudreau included the first 6 months of 2008 in her final calculation.)  At most, petitioners show that Ms. Boudreau recognized that she faced a difficult decision, one that required her to exercise discretion.  Petitioners, however, fail to allege any facts that show that for her to use 2005,

_____

[7]Those amounts yield an average monthly income of $6,636.  Not surprisingly, petitioners do not argue that $6,452, the average monthly income Ms. Boudreau calculated, is incorrect.

2006, 2007, and the first 6 months of 2008 was arbitrary, capricious, or without sound basis in fact or law.

### 2. Petitioners' Necessary Living Expenses

#### a. The Commissioner's Administrative Guidelines

Although they do not dispute that Ms. Boudreau correctly applied the Commissioner's administrative guidelines to determine their necessary living expenses, petitioners argue that those guidelines are contrary to the "literal and plain meaning" of the statute, sec. 7122, and the regulations, sec. 301.7122-1, Proced. & Admin. Regs. Petitioners assert that the statute and the regulations require respondent to permit them "to retain sufficient funds to pay basic living expenses" and that respondent must evaluate petitioners' "individual facts and circumstances" to determine the "amount of such basic living expenses". See sec. 301.7122-1(c)(2)(i), Proced. & Admin. Regs.

What petitioners assert is true, but what they conclude is false. They have failed to show that any provision of the Commissioner's administrative guidelines is contrary to the plain and literal meaning of the statute or regulations. Petitioners cite no authority that every documented expense is, for that reason alone, a "basic living expense" under the statute and regulations. Petitioners have failed to show any conflict between the Commissioner's administrative guidelines and the

statute or the regulations.[8]  Again, when an Appeals officer has followed the Commissioner's administrative guidelines to ascertain a taxpayer's reasonable collection potential and has rejected the taxpayer's offer-in-compromise on that ground, we generally have found no abuse of discretion.  See McClanahan v. Commissioner, T.C. Memo. 2008-161; Lemann v. Commissioner, T.C. Memo. 2006-37.

    b.  The Local Standards for Housing and Utilities

Although petitioners accept "the authority of the Secretary to issue national and local guidelines" "by county for each state",[9] petitioners argue that those standards constitute an expert opinion.  For that reason, petitioners demand that respondent provide the "underlying data", which petitioners accuse respondent of "manipulating".

_____

[8]In particular, petitioners assert that neither the statute nor any regulation states that a taxpayer's monthly payment for loans taken to finance a child's college education is not a necessary and basic living expense.  See generally IRM pt. 5.8.5.5.3(6) (Sept. 1, 2005) (allowing education expenses only for the taxpayer and only if required as a condition of present employment).  Petitioners are correct, yet their point is irrelevant.  The question is whether the administrative guideline is a reasonable interpretation of the silent statute and regulations.  Petitioners have failed to offer any argument to that effect.  Ms. Boudreau thus did not abuse her discretion by disallowing their monthly payments with respect to their child's student loans.

[9]We presume that petitioners make that seemingly superfluous concession because, in Dean v. Commissioner, T.C. Memo. 2009-269, petitioners' counsel questioned exactly that authority.  The Court quickly rejected that argument.  Id.

Petitioners are wrong. The national and local standards do not constitute an expert opinion. Respondent does not use them to prove any fact (i.e., that a certain allowance for monthly housing and utilities expenses is correct). See Fed. R. Evid. 702. Rather, the standard allowances are guidelines designed to protect taxpayers, see sec. 7122(d)(2)(A), and from which an Appeals officer may deviate, see sec. 7122(d)(2)(B). We have sustained the use of the national and local allowances as guidelines for basic monthly living expenses in evaluating the adequacy of proposed installment agreements and offers-in-compromise. See, e.g., Speltz v. Commissioner, 124 T.C. 165, 179 (2005), affd. 434 F.3d 782 (8th Cir. 2006); Fernandez v. Commissioner, T.C. Memo. 2008-210. Generally, we have found no abuse of discretion when an Appeals officer has used the local standard allowances for housing and utilities rather than the taxpayer's actual expenses. See, e.g., McDonough v. Commissioner, T.C. Memo. 2006-234, affd. sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009). In any event, we are not convinced that the derivation of the standard allowances is relevant in the absence of any assertion of specific facts showing that applying the standard allowance would leave petitioners without the resources to meet basic living expenses-- facts within their knowledge and as to which they need no discovery from respondent. See Marks v. Commissioner, T.C. Memo.

2008-226. Petitioners show only their actual living expenses. They fail to allege any facts showing that their basic living expenses exceed what Ms. Boudreau allowed them.

Petitioners make a final argument almost identical to an argument that petitioners' counsel made in Dean v. Commissioner, T.C. Memo. 2009-269. Petitioners assert that respondent has violated their "fundamental constitutional rights of procedural due process" and that we must require him to present expert testimony about the derivation of the local standard allowances. Cf. id. As we stated in Dean, petitioners' right to a precollection hearing and right to compromise their undisputed tax liability are privileges created by Congress, subject to conditions established by Congress. Their right to precollection procedures is statutory, and they have no constitutional right to avoid payment of their admitted tax liabilities. Their attempt to raise the dispute to constitutional levels is unconvincing. Cf. id.

### 3. Conclusion

We find that Ms. Boudreau did not abuse her discretion by averaging Mrs. Caney's income over 2005, 2006, 2007, and the first 6 months of 2008 to calculate her expected income. In the alternative, we find that Ms. Boudreau did not abuse her discretion in calculating petitioners' necessary living expenses.

Thus, we find that Ms. Boudreau did not abuse her discretion in calculating petitioners' reasonable collection potential.

B.  Conclusion

Petitioners have failed to allege facts suggesting that Ms. Boudreau did not properly apply the provisions of the Internal Revenue Code, the regulations, or the Commissioner's administrative guidelines in calculating petitioners' reasonable collection potential, which exceeds their offer-in-compromise and their total liabilities.  Thus, Ms. Boudreau did not abuse her discretion by rejecting petitioners' offer-in-compromise.

IV.  The Lien Hearing

Petitioners assert that they never received a hearing with respect to the lien notice.  Petitioners, however, fail to allege any harm they suffered as a result.  First, they do not suggest that they would have raised any new arguments.  Second, they do not argue that they have satisfied the statutory requirements for the release of the lien.  Section 6325(a) lists the two circumstances in which the Secretary will release a lien; that is, (1) when the liability is satisfied or has become unenforceable, or (2) when the Secretary has accepted a bond that is conditioned upon payment of the amount assessed.  Petitioners do not allege that the liability is satisfied or unenforceable and do not allege that they have even offered to post a bond. Petitioners have failed to allege facts showing that a lien

hearing would have resulted in the release of the lien. Petitioners thus have not alleged that a lien hearing would have made any difference with respect to either Ms. Boudreau's rejection of their offer-in-compromise or the lien itself.

V.   The Appeals Office Impartiality Requirement

Petitioners assert that Mr. McLaughlin, the Appeals team manager who signed the notice of determination, was not impartial.  That allegation springs from Dean v. Commissioner, supra.  In that case, Mr. Hood, as counsel for the taxpayers, had sent a letter to the Appeals officer during their negotiations. That letter, which we described in Dean as "intemperate and * * * reasonably perceived as possibly threatening", prompted Mr. McLaughlin, also the Appeals team manager in that case, to refer Mr. Hood to the Internal Revenue Service Office of Professional Responsibility.  In response, Mr. Hood referred Mr. McLaughlin and the Appeals officer to the Treasury Inspector General for Tax Administration less than a month before the notice of determination was issued in this case.

Petitioners argue, as did the taxpayers in Dean, that Mr. McLaughlin's involvement in their case was "inherently prejudicial".  (Petitioners fail, however, to allege that a new hearing with a different Appeals officer and Appeals team manager would yield a different result.)  For purposes of section 6330(b)(3), an "impartial" officer is one "who has had no prior

involvement with respect to the unpaid tax specified in subsection (a)(3)(A) before the first hearing under this section or section 6320."  See <u>Perez v. Commissioner</u>, T.C. Memo. 2002-274.  Petitioners have not alleged that either Ms. Boudreau or Mr. McLaughlin was involved in their case before their levy hearing.  We conclude that the section 6330(b)(3) impartiality requirement was satisfied.  Cf. <u>Dean v. Commissioner</u>, <u>supra</u>.

VI.  <u>Conclusion</u>

We find that Ms. Boudreau did not abuse her discretion by rejecting petitioners' offer-in-compromise and in sustaining the levy notice and the lien notice.  Petitioners have alleged no facts showing that she failed to follow applicable procedures or that her rejection of the offer-in-compromise was arbitrary, capricious, or without sound basis in fact or law.  Summary judgment is therefore appropriate.

<u>An appropriate order and decision will be entered for respondent</u>.