# United States Tax Court

T.C. Memo. 2025-63

IVEY BRANCH HOLDINGS, LLC, IVEY BRANCH INVESTORS,
LLC, TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 19189-19.                                Filed June 9, 2025.

———————

*Kip D. Nelson*, *Vivian D. Hoard*, and *Meeren S. Amin*, for petitioner.

*Samantha L. Yantz*, *Rion A. Daley*, *Olivia H. Rembach*, *Rachel L. Gregory*, *Laurel B. Stout*, and *Brian R. Cullin*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: This case involves a charitable contribution deduction claimed for 2015 by Ivey Branch Holdings, LLC (Ivey Branch), for the donation of a conservation easement. The Internal Revenue Service (IRS or respondent) issued a Notice of Final Partnership Administrative Adjustment (FPAA) disallowing the deduction and determining penalties. Currently before the Court is respondent's Motion for Partial Summary Judgment (Motion) contending that the IRS complied with the requirements of section 6751(b)(1) by securing timely supervisory approval of the penalties at issue.[1] We agree and accordingly will grant the Motion.

———————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]                               *Background*

The following facts are derived from the Pleadings, the parties' Motion papers, and the Declarations and Exhibits attached thereto. They are stated solely for the purpose of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Ivey Branch is a Georgia limited liability company that is a treated as a TEFRA partnership for Federal income tax purposes.[2]  Its tax matters partner is Ivey Branch Investors, LLC (petitioner).  Ivey Branch had its principal place of business in Georgia when the Petition was timely filed.  Absent stipulation to the contrary, this case is appealable to the U.S. Court of Appeals for the Eleventh Circuit.  *See* § 7482(b)(1)(E).

Ivey Branch acquired a tract of land in Jefferson County, Georgia. In 2015, after petitioner had solicited investors, Ivey Branch granted a conservation easement over the property.  Ivey Branch timely filed Form 1065, U.S. Return of Partnership Income, for its 2015 tax year, claiming a charitable contribution deduction of $24.388 million for its donation of the easement.

The IRS selected Ivey Branch's 2015 return for examination and assigned the case to Revenue Agent (RA) Maxim Naporko in the Large Business & International Division.  At that time Supervisory RA Karen Carreiro (formerly Karen Carreiro-Smithson) served as Mr. Naporko's acting team manager and was thus his immediate supervisor.

During 2016 Susan Brown served as a TEFRA Coordinator for the IRS.  In that capacity she provided technical assistance to revenue agents handling examinations of TEFRA partnerships.  In April 2019 or earlier, she began providing assistance to RA Naporko in connection with his examination of Ivey Branch.  Between April 5 and May 17, 2019, Ms. Brown and RA Naporko communicated regularly by email on a variety of subjects.  These subjects included the limited time remaining before expiration of the limitations period, the possibility of securing an extension of the limitations period, the existence of non-TEFRA

---

[2] Before its repeal, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, governed the tax treatment and audit procedures for many partnerships, including Ivey Branch.

[*3] adjustments for the partners, and the procedures governing assertion of penalties.

In May 2019, as the examination neared completion, RA Naporko recommended assertion of penalties against Ivey Branch under sections 6662 and 6662A. His recommendations to this effect were set forth in a civil penalty lead sheet and Form 886–A, Explanation of Items. Copies of both documents are attached to a Declaration he submitted in support of the Motion. The lead sheet indicates that it was prepared by "Team Member Maxim Naporko." RA Naporko has averred under penalty of perjury that he conducted the examination of Ivey Branch and that he "made the initial determination" to assert the section 6662 and 6662A penalties.

On May 13, 2019, RA Naporko sent the draft penalty lead sheet, Form 4605–A, Examination Changes, and other workpapers to Ms. Brown for review. Later that day Ms. Brown replied by email that she had "added the penalties to the [Form] 4605-A and a reference to the F[orm] 886-A in the remarks section." She asked RA Naporko to provide her with certain additional examination documents, which he did. On May 17, 2019, she emailed RA Naporko to note that she had revised the Form 886–A "to agree with the F[orm] 4605-A language for the penalty."

During 2019 James Fee was a senior counsel with the Office of Chief Counsel with responsibility for passthrough entities and "Global High Wealth" matters. Ms. Carreiro asked Mr. Fee to review the draft FPAA package prepared by RA Naporko. By email dated June 18, 2019, she explained that it was "a short statute case," with the limitations period set to expire in September.

On July 11, 2019, Mr. Fee had a brief telephone conversation with RA Naporko. On July 18, after reviewing the draft documents, Mr. Fee emailed RA Naporko and Ms. Carreiro to say that he had "approved [their] FPAA." He added: "Please read my memo that recommends changes to the penalty determination language" to ensure that the "written manager approval covers those penalties for purposes of section 6751(b)."

On August 9, 2019, RA Naporko prepared an updated penalty lead sheet, again recommending assertion of the section 6662 and 6662A penalties. Ms. Carreiro, his team manager, digitally signed the penalty lead sheet on August 12, 2019. Ms. Carreiro has averred under penalty of perjury that she was RA Naporko's "immediate supervisor," that RA

[*4] Naporko "made the initial determination" that the penalties should be asserted, and that she "personally approved, in writing, the initial determination" to assert those penalties. On August 20, 2019, the IRS issued petitioner an FPAA, including a Form 866–A, disallowing in toto the $24.388 million deduction Ivey Branch claimed for the easement and determining the aforementioned penalties.

Petitioner timely petitioned this Court for readjustment of partnership items. On March 12, 2025, respondent filed a Motion for Partial Summary Judgment, seeking a ruling that he has sufficiently complied with the section 6751(b) requirements for supervisory approval of all penalties at issue.

*Discussion*

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. But where the moving party makes and properly supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d). We conclude that no material facts are in genuine dispute and that the question presented by respondent's Motion may be decided summarily.

II.   *Analysis*

Section 6751(b) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In a TEFRA case such as this, "the Commissioner must secure written supervisory approval for the penalty before issuing an FPAA to the partnership." *Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 83 (2019). If supervisory approval is obtained by that date, our Court has held that the partnership must establish that the approval was untimely, i.e., "that there was a formal

[*5] communication of the penalty [to the partnership] before the proffered approval [was secured]." *See Frost v. Commissioner*, 154 T.C. 23, 35 (2020).

Absent stipulation to the contrary this case is appealable to the Eleventh Circuit, and we thus follow its precedent. *See Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). The Eleventh Circuit has interpreted the term "assessment" to refer to the "ministerial" process by which the IRS formally records the tax debt. *Kroner v. Commissioner*, 48 F.4th 1272, 1278 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73. The IRS thus satisfies section 6751(b) "so long as a supervisor approves an initial determination of a penalty assessment before [the IRS] assesses those penalties." *See Kroner v. Commissioner*, 48 F.4th at 1276.

Under a literal application of the standard enunciated by the Eleventh Circuit in *Kroner*, supervisory approval could seemingly be secured at any moment before actual assessment of the tax, which has not yet occurred. But the Eleventh Circuit left open the possibility that supervisory approval in some cases might need to be secured sooner, i.e., before the supervisor "has lost the discretion to disapprove" assertion of the penalty. *See id.* at 1279 n.1; *cf. Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022) (treating supervisory approval as timely if secured before the penalty is assessed or "before the relevant supervisor loses discretion whether to approve the penalty assessment"), *rev'g and remanding* 154 T.C. 68 (2020); *Chai v. Commissioner*, 851 F.3d 190, 220 (2d Cir. 2017) (concluding that supervisory approval must be obtained at a time when "the supervisor has the discretion to give or withhold it"), *aff'g in part, rev'g in part* T.C. Memo. 2015-42.

The record establishes that RA Naporko, who conducted the Ivey Branch examination, made the "initial determination" to assert the penalties. Respondent has supplied copies of the penalty lead sheet and a declaration from RA Naporko averring that he "conduct[ed] the examination of [Ivey Branch]" and "made the initial determination" to assert the section 6662 and 6662A penalties. The penalty lead sheet explicitly states that it was prepared by "Team Member Maxim Naporko."

The record establishes that Ms. Carreiro was RA Naporko's "immediate supervisor" at all relevant times. RA Naporko has averred under penalty of perjury that Ms. Carreiro was his immediate supervisor during the examination. Ms. Carreiro has likewise averred under

**[\*6]** penalty of perjury that she was RA Naporko's "immediate supervisor" during the Ivey Branch audit. Her signature appears on the penalty lead sheet, a copy of which is attached to her Declaration. We conclude that Ms. Carreiro was RA Naporko's "immediate supervisor" within the meaning of section 6751(b). *See Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021) (holding that the "immediate supervisor" is the person who supervises the agent's substantive work on an examination); *Park Lake II, LLC v. Commissioner*, T.C. Memo. 2025-11, at \*2–3, \*7–8 (holding that signature of acting team manager on a penalty approval form satisfied the statutory requirements); *Salacoa Stone Quarry, LLC v. Commissioner*, T.C. Memo. 2023-68, at \*6 (same).

The record establishes that Ms. Carreiro timely approved the penalties. She affixed her electronic signature to the penalty lead sheet on August 12, 2019, using Adobe software. She stated that she was providing "written managerial approval for all penalties determined in the FPAA, including those under §§ 6662(a), 6662(b)(1), 6662(b)(2), 6662(b)(3), 6662(e), 6662(h) (40%) and 6662A."

The FPAA was issued on August 20, 2019. As of August 12, the date on which Ms. Carreiro supplied her approval, the IRS examination remained at a stage where she had discretion to approve or disapprove the penalty recommendations. Therefore, under the reading of *Kroner* most favorable to petitioner, the IRS complied with section 6751(b)(1) in this case because Ms. Carreiro timely approved the relevant penalties and did so in writing.

Petitioner challenges the status of RA Naporko as the officer who made the "initial determination" to assert the penalties. Petitioner first contends that Ms. Brown made the "initial determination" because she reviewed RA Naporko's draft FPAA package and "added the penalties to the [Form] 4605-A and a reference to the F[orm] 886-A in the remarks section."

This argument strikes us as frivolous. Ms. Brown was a TEFRA Coordinator for the IRS. In that capacity she provided technical assistance to revenue agents, like RA Naporko, who were handling examinations of TEFRA partnerships. The email traffic shows that she advised him on several technical matters and answered questions he posed. When he sent her the FPAA package on May 13, 2019, he had *already recommended* the penalties described on the penalty lead sheet. Her advice was purely technical in nature, designed to ensure that the FPAA package met all formal requirements and that the penalty language

[*7] appearing in the various documents was consistent. She plainly did not make the "initial determination" of any penalty.

Petitioner next contends that Mr. Fee, the Chief Counsel attorney, made the "initial determination" because he recommended "changes to the penalty determination language" in the FPAA. Again we disagree. "Area Counsel must approve all FPAAs before issuance." *Internal Revenue Manual* (IRM) 4.31.2.7.2.5(1)(d) (May 10, 2019). As the attorney assigned to review the draft FPAA, Mr. Fee had the responsibility to determine whether that document was accurate.[3]

When Mr. Fee reviewed the FPAA package in July 2019, RA Naporko had already recommended the penalties shown on the penalty lead sheet. In his capacity as the reviewing Chief Counsel attorney, Mr. Fee had no familiarity with the substance of the Ivey Branch examination. His advice, like Ms. Brown's, was purely technical in nature, designed to ensure that the FPAA package met all formal requirements.

Mr. Fee clearly did not make the "initial determination" of the penalties at issue. As we have repeatedly held, the "initial determination of [a penalty] assessment" is a formal action by the Examination Division directed to a particular taxpayer. *See Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020). It is the duty of the examining agent—here, RA Naporko—to determine penalties. *See Cattail Holdings*, T.C. Memo. 2023-17, at *11. In her Declaration Ms. Carreiro averred that she was the "immediate supervisor" of RA Naporko, that "[he] made the initial determination," and that she "approved the initial determination." As the "immediate supervisor," Ms. Carreiro was obviously in a position to know who made the "initial determination" of the penalties she was approving.

The record establishes that RA Naporko consulted with Ms. Brown and Mr. Fee about the FPAA package, including the penalty recommendations that RA Naporko had set forth on the penalty lead sheet. Such discussions among IRS officials do not constitute the "initial determination of [a penalty] assessment" within the meaning of section 6751(b). *See Nassau River Stone, LLC v. Commissioner*, T.C. Memo.

---

[3] It is well established that it is among the duties of Chief Counsel attorneys to advise revenue agents and review their work. *See* IRM 33.1.2.7.4 (June 2, 2014) (dealing with Chief Counsel's authority in reviewing Notices of Deficiency); *id.* 33.1.2.8(1) (Oct. 17, 2016) ("The role of the Field Counsel is to advise whether a deficiency notice should be issued, and if so, to make recommendations concerning the issues to be asserted . . . .").

[*8] 2023-36, at *6–7 (citing *Belair Woods*, 154 T.C. at 9). The penalty approval form, corroborated by the averments of RA Naporko and Ms. Carreiro and other documentary evidence, establishes that RA Naporko made the "initial determination" to assert the penalties set forth on that form. Although petitioner dismisses these averments as "self-serving," it offers nothing but speculation to support its position. Such speculation is not enough to establish a genuine dispute of material fact. *See* Rule 121(d).

Finally, assuming arguendo that RA Naporko did make the "initial determination," petitioner contends that Ms. Carreiro was not his "immediate supervisor. Petitioner offers two theories to support that contention. It asserts that the Secretary has designated a higher level official—a Director of Field Operations—to approve penalties of the sort involved here. Alternatively, it asserts that Ms. Brown may have been RA Naporko's "immediate supervisor" because she offered him technical advice about preparation of the FPAA package.

Both arguments are frivolous. Section 6751(b) provides that the initial determination of a penalty assessment must be approved by "the immediate supervisor of the individual making such determination *or* such higher level official as the Secretary may designate." (Emphasis added.) Suffice to say that the word "or" permits approval by either type of official. *See Goddard v. Commissioner*, T.C. Memo. 2022-96, 124 T.C.M. (CCH) 187, 197. And Ms. Brown was not a member of the examination team, but a TEFRA Coordinator who supplied technical advice relating to TEFRA partnerships. She could not possibly have been Mr. Naporko's "immediate supervisor" because she did not supervise his substantive work on the Ivey Branch audit. *See Sand Inv. Co.*, 157 T.C. at 142 (holding that the "immediate supervisor" is the person who supervises the revenue agent's substantive work on an examination).

Petitioner asks that we defer decision of this question pending further discovery to obtain all "documents electronically with metadata intact." We are mindful that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Tr. Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988). But discovery must be relevant to "the subject matter involved in the pending case." Rule 70(b)(1); *see Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947); *Caney v. Commissioner*, T.C. Memo. 2010-90, 99 T.C.M. (CCH) 1366, 1368.

**[\*9]** The discovery petitioner seeks is irrelevant to the resolution of the question presented by respondent's Motion. *See* Rule 121(e); *Caney*, 99 T.C.M. (CCH) at 1368 (considering whether "further discovery would likely yield any fact essential to [the nonmoving party's] opposition to the [summary judgment] motion"). The record conclusively establishes that RA Naporko made the "initial determination" to assert the penalties in question and obtained timely supervisory approval from Ms. Carreiro. We have repeatedly held that a manager's signature on a penalty approval form, without more, is sufficient to satisfy the statutory requirements. *Sparta Pink Prop., LLC v. Commissioner*, T.C. Memo. 2022-88, 124 T.C.M. (CCH) 121, 124 (citing *Belair Woods*, 154 T.C. at 17); *see, e.g.*, *Thompson v. Commissioner*, 155 T.C. 87, 93–94 (2020); *Goddard*, 124 T.C.M. at 197; *Excelsior Aggregates, LLC v. Commissioner*, T.C. Memo. 2021-125, 122 T.C.M. (CCH) 292, 294. By propounding discovery seeking communications among members of the IRS exam team, petitioner seeks improperly to look behind the statements and signatures appearing on the face of the forms. *See Sparta Pink Prop.*, 124 T.C.M. (CCH) at 124; *Patel v. Commissioner*, T.C. Memo. 2020-133, 120 T.C.M. (CCH) 211, 214; *Raifman v. Commissioner*, T.C. Memo. 2018-101, 116 T.C.M. (CCH) 13, 28.

We have regularly decided section 6751(b)(1) questions on summary judgment on the basis of IRS records and declarations from relevant IRS officers. *See, e.g.*, *Sand Inv.*, 157 T.C. at 142; *Long Branch Land, LLC v. Commissioner*, T.C. Memo. 2022-2, 123 T.C.M. (CCH) 1008, 1009. And absent some irregularity in the documentary record, we have rejected the notion that examining agents and their supervisors must be subjected to cross-examination. *See Thompson v. Commissioner*, T.C. Memo. 2022-80, at \*8; *Raifman*, 116 T.C.M. (CCH) at 27–28 (holding that cross-examination "would be immaterial and wholly irrelevant to ascertaining whether [the IRS] complied with the written supervisory approval requirement"). There is no irregularity in the record here, and it conclusively establishes that the requirements of section 6751(b)(1) were met.

To reflect the foregoing,

*An order will be issued granting respondent's Motion for Partial Summary Judgment.*