# United States Tax Court

T.C. Memo. 2025-75

JEFFERSON PROPERTY HOLDINGS, LLC, STRATEGIC FUND
MANAGER, LLC, PARTNERSHIP REPRESENTATIVE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 10383-23.                          Filed July 14, 2025.

————————

*Adam R. Young*, *Vivian D. Hoard*, and *Meeren S. Amin*, for petitioner.

*Rion A. Daley*, *Olivia H. Rembach*, *Rachel L. Gregory*, *Laurel B. Stout*, and *Brian R. Cullin*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: This case involves a charitable contribution deduction claimed for 2018 by Jefferson Property Holdings, LLC (petitioner), for the donation of a conservation easement. The Internal Revenue Service (IRS or respondent) issued a Notice of Final Partnership Adjustment (FPA) disallowing the deduction and determining penalties. Currently before the Court is respondent's Motion for Partial Summary Judgment (Motion) contending that the IRS complied with the requirements of section 6751(b)(1) by securing timely supervisory approval of the penalties at issue.[1] We agree and accordingly will grant the Motion.

————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**Served 07/14/25**

[*2]                              *Background*

The following facts are derived from the Pleadings, the parties' Motion papers, and the Declarations and Exhibits attached thereto. They are stated solely for the purpose of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Petitioner is a Georgia limited liability company that is a treated as a BBA partnership for Federal income tax purposes, and its partnership representative is Strategic Fund Manager, LLC.[2] Petitioner had its principal place of business in Georgia when the Petition was timely filed. Absent stipulation to the contrary, this case is appealable to the U.S. Court of Appeals for the Eleventh Circuit. *See* § 7482(b)(1)(E).

Petitioner acquired a tract of land in Jefferson County, Georgia. In 2018, after it had solicited investors, petitioner granted a conservation easement over the property. Petitioner timely filed Form 1065, U.S. Return of Partnership Income, for its 2018 tax year, claiming a charitable contribution deduction of $25.152 million for its donation of the easement.

The IRS selected petitioner's 2018 return for examination and assigned the case to Revenue Agent (RA) Brian Milewski. RA Milewski was a member of Group 1541 in the IRS Large Business & International Division. In February 2022, as the examination neared completion, RA Milewski recommended assertion against petitioner of a 40% penalty for gross valuation misstatement. *See* § 6662(b)(3), (h). In the alternative he recommended assertion of a 20% penalty for substantial valuation misstatement, reportable transactions understatement, negligence, and/or a substantial understatement of income tax. *See* §§ 6662(b)(1)–(3), (c)–(e), 6662A.[3]

RA Milewski's determinations to this effect were set forth in a civil penalty lead sheet and Form 886–A, Explanation of Items. Copies of both documents are included in the record. RA Milewski has averred under penalty of perjury that he conducted the examination of

---

[2] The Bipartisan Budget Act of 2015 (BBA), Pub. L. No. 114-74, § 1101(a), (c)(1), (g), 129 Stat. 584, 625, 638, governs the tax treatment and audit procedures for many partnerships, including petitioner.

[3] Respondent has since conceded the section 6662A penalty. We accordingly need not consider whether the IRS secured timely supervisory approval for it.

[*3] petitioner's return and that he "made the initial determination" to assert the aforementioned penalties.

During February 2022 Tara Volungis was a senior counsel with the IRS Office of Chief Counsel. Among her responsibilities was providing advice to revenue agents (such as RA Milewski) who were conducting examinations of conservation easement transactions.

On February 3, 2022, RA Milewski asked Ms. Volungis to review his draft Form 886–A and to review his draft penalty lead sheet to make sure he "ha[d] the applicable penalties check[ed] off." At 9:08 a.m. Ms. Volungis responded by email that the penalty form "looks good" and that "it [could] be signed." She stated that the Form 886–A "is good" and that she had only "some very minor changes on it." She noted that her manager was also reviewing the Form 886–A, but there is no indication from the email correspondence that her manager supplied any comments.

During February 2022 Leonard Santarsiero was the acting manager of Group 1541 and was thus RA Milewski's immediate supervisor. At 11:04 a.m. on February 3, 2022, following Ms. Volungis's review, he digitally signed the penalty lead sheet using Adobe software. Mr. Santarsiero has averred under penalty of perjury that he was designated acting team manager of Group 1541 from December 29, 2021, through April 30, 2022. He has averred that he was RA Milewksi's "immediate supervisor," that RA Milewski "made the initial determination" that the penalties should be asserted, and that he "personally approved, in writing, the initial determination" to assert those penalties.

On April 5, 2023, the IRS issued petitioner an FPA, including the Form 866–A, disallowing the $25.152 million deduction it had claimed for the easement and determining the aforementioned penalties. Petitioner timely petitioned this Court for readjustment of partnership-related items. On March 10, 2025, respondent filed a Motion for Partial Summary Judgment, seeking a ruling that he has sufficiently complied with the section 6751(b)(1) requirements for supervisory approval of all penalties at issue.

*Discussion*

I. *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner,* 116 T.C. 73, 74 (2001). We may grant

[*4] partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. But where the moving party makes and properly supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d). We conclude that no material facts are in genuine dispute and that the question presented by respondent's Motion may be decided summarily.

II. *Analysis*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In *Kroner v. Commissioner*, 48 F.4th 1272, 1276 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73, the U.S. Court of Appeals for the Eleventh Circuit held that "the IRS satisfies [s]ection 6751(b) so long as a supervisor approves an initial determination of a penalty assessment before [the IRS] assesses those penalties." The court interpreted the phrase "initial determination of [the] assessment" to refer to the "ministerial" process by which the IRS formally records the tax debt. *See id.* at 1278. Absent stipulation to the contrary this case is appealable to the Eleventh Circuit, and we thus follow its precedent. *See Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).

Under a literal application of the standard enunciated by the Eleventh Circuit in *Kroner*, supervisory approval could seemingly be secured at any moment before actual assessment of the tax, which has not yet occurred. But the Eleventh Circuit left open the possibility that supervisory approval in some cases might need to be secured sooner, i.e., before the supervisor "has lost the discretion to disapprove" assertion of the penalty. *See Kroner v. Commissioner*, 48 F.4th at 1279 n.1; *cf. Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022) (treating supervisory approval as timely if secured before the penalty is assessed or "before the relevant supervisor loses discretion whether to approve the penalty assessment"), *rev'g and remanding* 154 T.C. 68 (2020); *Chai v. Commissioner*, 851 F.3d 190, 220

[*5] (2d Cir. 2017) (concluding that supervisory approval must be obtained at a time when "the supervisor has the discretion to give or withhold it"), *aff'g in part, rev'g in part* T.C. Memo. 2015-42.

The record establishes that RA Milewski, who conducted the examination of petitioner's return, made the "initial determination" to assert the penalties. Respondent has supplied copies of the penalty lead sheet and a declaration from RA Milewski averring that he "conduct[ed] the examination of [petitioner's return]" and "made the initial determination" to assert the penalties.

The record establishes that Mr. Santarsiero was RA Milewski's "immediate supervisor" at all relevant times. RA Milewski has averred under penalty of perjury that Mr. Santarsiero was his immediate supervisor during the examination. Mr. Santarsiero has likewise averred under penalty of perjury that he was RA Milewski's "immediate supervisor" during petitioner's audit. His signature appears on the penalty approval form, a copy of which is attached to his Declaration. We conclude that Mr. Santarsiero was RA Milewski's "immediate supervisor" within the meaning of section 6751(b). *See Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021) (holding that the "immediate supervisor" is the person who supervises the agent's substantive work on an examination); *Park Lake II, LLC v. Commissioner*, T.C. Memo. 2025-11, at *2–3, *7–8 (holding that signature of acting team manager on a penalty approval form satisfied the statutory requirements); *Salacoa Stone Quarry, LLC v. Commissioner*, T.C. Memo. 2023-68, at *6 (same).

The record establishes that Mr. Santarsiero timely approved the penalties. He affixed his electronic signature to the penalty approval form on February 3, 2022, using Adobe software. The FPA was issued on April 5, 2023. As of February 3, 2022, the date on which Mr. Santarsiero supplied his approval, the IRS examination remained at a stage where he had discretion to approve or disapprove the penalty recommendations. Therefore, under the reading of *Kroner* most favorable to petitioner, the IRS complied with section 6751(b)(1) in this case because Mr. Santarsiero timely approved the relevant penalties and did so in writing.

Petitioner challenges the status of RA Milewski, who conducted the examination of its return, as the person who made the "initial determination" to assert the penalties. Petitioner contends that Ms. Volungis, the Chief Counsel attorney, made the "initial determination" because RA Milewski asked her to review and approve the draft penalty

[*6] approval form and Form 886–A. Ms. Volungis suggested "very minor changes" to the Form 886–A and commented that the penalty approval form "looks good" and "[could] be signed." According to petitioner, these comments by Ms. Volungis constituted the "initial determination" of the penalties, so that her supervisor (not Mr. Santarsiero) was supposedly the proper person to approve the penalties.

Petitioner is grasping at straws. It concedes, as it must, that "a revenue agent may seek advice from IRS counsel on procedural or other matters."[4] That is what RA Milewski did. He forwarded to Ms. Volungis his draft penalty approval form, which recommended the penalties at issue, and asked for her comments. By commenting that the penalty approval form "looks good" and "[could] be signed," Ms. Volungis was not "determining" any penalties. She was simply signing off on the document as a formal matter. And in suggesting "very minor changes" to the Form 886–A, she was providing the sort of technical advice that petitioner admits a revenue agent may properly seek from Chief Counsel.

As we have repeatedly held, the "initial determination of [a penalty] assessment" is a formal action by the Examination Division directed to a particular taxpayer. *See Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020). It is the duty of the examining agent—here, RA Milewski—to determine penalties. *See Cattail Holdings, LLC v. Commissioner*, T.C. Memo. 2023-17, at *11. Petitioner does not dispute that RA Milewski conducted the examination of its return, and Mr. Santarsiero has averred that RA Milewski "made the initial determination" to assert the penalties. As the acting manager of Group 1541, Mr. Santarsiero was obviously in a position to know which member of his team was recommending the penalties he was approving.

The record establishes that RA Milewski consulted with Ms. Volungis about his penalty recommendations, which were set forth on the draft penalty lead sheet. Such discussions among IRS officials do not constitute the "initial determination of [a penalty] assessment" within the meaning of section 6751(b)(1). *See Nassau River Stone, LLC v. Commissioner*, T.C. Memo. 2023-36, at *6–7 (citing *Belair Woods*, 154 T.C. at 9). Nowhere in the email correspondence petitioner cited does

---

[4] It is well established that it is among the duties of Chief Counsel attorneys to advise revenue agents and review their work. *See* Internal Revenue Manual 33.1.2.7.4 (June 2, 2014) (dealing with Chief Counsel's authority in reviewing notices of deficiency); *id.* 33.1.2.8(1) (Oct. 17, 2016) ("The role of the Field Counsel is to advise whether a deficiency notice should be issued, and if so, to make recommendations concerning the issues to be asserted . . . .").

**[\*7]** Ms. Volungis recommend the assertion of any penalty against petitioner, for valuation misstatement or otherwise. The penalty approval form, corroborated by the averments of RA Milewski and Mr. Santarsiero and other documentary evidence, establishes that RA Milewski made the "initial determination" to assert the penalties set forth on that form. Although petitioner dismisses these averments as "self-serving," it offers nothing but speculation to support its position. Such speculation is not enough to establish a genuine dispute of material fact. *See* Rule 121(d).

Finally, assuming arguendo that RA Milewski did make the "initial determination," petitioner contends that Mr. Santarsiero was not the proper officer to approve the penalties. First, petitioner asserts that the Secretary has designated a higher level official—a Director of Field Operations—to approve penalties of the sort involved here. That argument is wholly unconvincing. Section 6751(b) provides that the initial determination of a penalty assessment must be approved by "the immediate supervisor of the individual making such determination *or* such higher level official as the Secretary may designate." (Emphasis added.) Suffice it to say that the word "or" permits approval by either type of official. *See Ivey Branch Holdings, LLC v. Commissioner*, T.C. Memo. 2025-63, at \*8; *Goddard v. Commissioner*, T.C. Memo. 2022-96, 124 T.C.M. (CCH) 187, 197.

Second, petitioner asserts that Mr. Santarsiero did not "supervise" RA Milewski's work because "he was the temporary acting manager of RA Milewski for about a month before RA Milewski finished a draft [Form] 886A and penalty lead sheet." Once again, we are not persuaded. The record shows that Mr. Santarsiero was promoted to acting manager of Group 1541 on December 29, 2021, and served in that capacity until April 30, 2022. Mr. Santarsiero signed the penalty approval form on February 3, 2022, and he was RA Milewski's immediate supervisor at that time. It is a fact of life in the IRS (as in any large organization) that staff members change jobs, are reassigned, get promoted, or retire. The fact that RA Milewski may have had a different supervisor earlier or later in the examination is inconsequential. *See Belair Woods*, 154 T.C. at 17; *Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 84–86 (2019).

Petitioner asks that we defer decision on this question pending further discovery to obtain all "documents electronically with metadata intact." We are mindful that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity

**[\*8]** for discovery." *Snook v. Tr. Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988). But discovery must be relevant to "the subject matter involved in the pending case." Rule 70(b)(1); *see Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947); *Caney v. Commissioner*, T.C. Memo. 2010-90, 99 T.C.M. (CCH) 1366, 1368.

The discovery petitioner seeks is irrelevant to the resolution of the question presented by respondent's Motion. *See* Rule 121(e); *Caney*, 99 T.C.M. (CCH) at 1368 (considering whether "further discovery would likely yield any fact essential to [the nonmoving party's] opposition to the [summary judgment] motion"). The record conclusively establishes that RA Milewski made the "initial determination" to assert the penalties in question and obtained timely supervisory approval from Mr. Santarsiero. We have repeatedly held that a manager's signature on a penalty approval form, without more, is sufficient to satisfy the statutory requirements. *Sparta Pink Prop., LLC v. Commissioner*, T.C. Memo. 2022-88, 124 T.C.M. (CCH) 121, 124 (citing *Belair Woods*, 154 T.C. at 17); *see, e.g.*, *Thompson v. Commissioner*, 155 T.C. 87, 93–94 (2020); *Goddard*, 124 T.C.M. (CCH) at 197; *Excelsior Aggregates, LLC v. Commissioner*, T.C. Memo. 2021-125, 122 T.C.M. (CCH) 292, 294. By propounding discovery seeking communications among members of the IRS exam team, petitioner seeks improperly to look behind the statements and signatures appearing on the face of the forms. *See Sparta Pink Prop.*, 124 T.C.M. (CCH) at 124; *Patel v. Commissioner*, T.C. Memo. 2020-133, 120 T.C.M. (CCH) 211, 214; *Raifman v. Commissioner*, T.C. Memo. 2018-101, 116 T.C.M. (CCH) 13, 28. We will not condone fishing expeditions of this sort.

We have regularly decided section 6751(b)(1) questions on summary judgment on the basis of IRS records and declarations from relevant IRS officers. *See, e.g.*, *Sand Inv.*, 157 T.C. at 142; *Long Branch Land, LLC v. Commissioner*, T.C. Memo. 2022-2, 123 T.C.M. (CCH) 1008, 1009. And absent some irregularity in the documentary record, we have rejected the notion that examining agents and their supervisors must be subjected to cross-examination. *See Thompson v. Commissioner*, T.C. Memo. 2022-80, at \*8; *Raifman*, 116 T.C.M. (CCH) at 27–28 (holding that cross-examination "would be immaterial and wholly irrelevant to ascertaining whether [the IRS] complied with the written supervisory approval requirement"). There is no irregularity in the documentary record here, and it conclusively establishes that the requirements of section 6751(b)(1) were met.

**[\*9]**    To reflect the foregoing,

*An order will be issued granting respondent's Motion for Partial Summary Judgment.*